# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RANDY BOUDREAUX,<br><br>       Plaintiff,<br><br>             v.<br><br>LOUISIANA STATE BAR ASSOCIATION, a Louisiana Nonprofit Corporation;<br>LOUISIANA SUPREME COURT;<br>BERNETTE J. JOHNSON, Chief Justice of the Louisiana Supreme Court;<br>JOHN DOE, successor to the Honorable Greg Guidry as Associate Justice of the Louisiana Supreme Court for the First District;<br>SCOTT J. CRICHTON, Associate Justice of the Louisiana Supreme Court for the Second District;<br>JAMES T. GENOVESE, Associate Justice of the Louisiana Supreme Court for the Third District;<br>MARCUS R. CLARK, Associate Justice of the Louisiana Supreme Court for the Fourth District;<br>JEFFERSON D. HUGHES, III, Associate Justice of the Louisiana Supreme Court for the Fifth District;<br>JOHN L. WEIMER, Associate Justice of the Louisiana Supreme Court for the Sixth District. | Case No. _____<br><br><br>**CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>42 U.S.C. § 1983 (Freedom of Speech)<br>42 U.S.C. § 1983 (Freedom of Association)<br>42 U.S.C. § 1988 (Attorney Fees) |

1.      This civil rights lawsuit seeks injunctive and declaratory relief to prevent unconstitutional coerced speech and association. The State of Louisiana requires attorneys to join, associate with, and pay dues to the Louisiana State Bar Association ("LSBA") in order to practice their chosen profession in the state. The LSBA then uses those compelled dues to engage in political and ideological speech, including advocacy on issues of public

policy. This scheme violates the First and Fourteenth Amendment free speech and association rights of attorneys.

2.     First, requiring attorneys to join the LSBA violates their First Amendment rights to free speech and association and is not necessary to regulate the legal profession or improve the quality of legal services in Louisiana.

3.     Second, the collection of mandatory bar dues to subsidize political and ideological speech without attorneys' affirmative consent violates their First Amendment right to choose what private speech they will and will not support and is not necessary to regulate the legal profession or improve the quality of legal services in Louisiana.

4.     Because the State of Louisiana can regulate the legal profession and improve the quality of legal services without violating attorneys' First Amendment rights through forced LSBA membership and dues, it must do so. *See Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

5.     Third, assuming in the alternative that mandatory bar membership and dues are not inherently unconstitutional, the LSBA fails to provide essential safeguards to ensure that attorneys' dues are not used for activities that are not germane to the purpose of improving the quality of legal services by regulating the legal profession.

6.     This lawsuit therefore asks this Court to declare Louisiana's bar membership requirement unconstitutional and order Defendants to stop forcing attorneys to subsidize the LSBA's speech without their affirmative consent, or, alternatively, to order Defendants to adopt procedures to protect attorneys from being forced to subsidize LSBA speech and

activities that are not germane to improving the quality of legal services and regulating the legal profession.

## JURISDICTION AND VENUE

7.     This action is brought under 42 U.S.C. §§ 1983 and 1988.

8.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

9.     This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendants are headquartered in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11.     Plaintiff Randy Boudreaux is a citizen of the United States and resides in New Orleans, Louisiana. Mr. Boudreaux is a duly licensed attorney under the laws of Louisiana and is a member of the LSBA because Louisiana law requires Mr. Boudreaux to join, associate with, and pay dues to, the LSBA as a condition of practicing law.

12.     Defendant Louisiana State Bar Association is a Louisiana nonprofit corporation established under Act 54 of the Louisiana Legislature of 1940. La. R.S. § 37:211. The LSBA has the authority to withdraw and to use mandatory LSBA dues paid by attorneys and to remove attorneys from the LSBA's membership rolls for nonpayment of dues. The LSBA currently has more than 22,000 members.

13.     Defendant Louisiana Supreme Court is Louisiana's judicial branch of government. The Louisiana Supreme Court is responsible for enforcing laws requiring membership and funding of the LSBA as a condition of practicing law in the State of Louisiana.

14.     Defendant Bernette J. Johnson is Chief Justice of the Louisiana Supreme Court.

15.     Defendant John Doe is an individual whose identity is currently unknown, who will succeed the recently retired Hon. Greg Guidry as the Associate Justice of the Louisiana Supreme Court from Louisiana's First Judicial District.

16.     Defendant Scott J. Crichton is an Associate Justice of the Louisiana Supreme Court.

17.     Defendant James T. Genovese is an Associate Justice of the Louisiana Supreme Court.

18.     Defendant Marcus R. Clark is an Associate Justice of the Louisiana Supreme Court.

19.     Defendant Jefferson D. Hughes, III, is an Associate Justice of the Louisiana Supreme Court.

20.     Defendant John L. Weimer is an Associate Justice of the Louisiana Supreme Court.

21.     All of the individual Defendants are sued in their official capacities.

## FACTS

**LSBA's Mandatory Bar Association Membership and Fee Collection**

22.    Louisiana law compels individuals to join the LSBA in order to engage in their chosen profession. *See, e.g.,* La. R.S. § 37:211 (citing Act 54 of 1940, which states "[t]hat the membership of the [LSBA] shall consist of all persons now or hereafter regularly licensed to practice law in this State, and no person shall practice law in this State who is not a member therefor in good standing"); *see also* La. R.S. § 37:213 ("No natural person, who has not first been duly and regularly licensed and admitted to practice law by the supreme court of this state … shall: (1) Practice law."); La. S. Ct. R. XIX, § 8(C) ("Each lawyer required by this rule to pay an annual fee shall, on or before July 1st of each year, file with the [LSBA] a registration statement on a form approved by the Court.").

23.    Louisiana law authorizes the LSBA to charge annual membership fees to its mandatory members. *See* La. R. Prof. Cond. 1.1(c) ("A lawyer is required to comply with all of the requirements of the Supreme Court's rules regarding annual registration, including payment of Bar dues …"); *In re Mundy*, 202 La. 41 (1942) (upholding LSBA's authority to collect dues).

24.    The LSBA currently charges dues of $80 to "[m]embers admitted 3 years or less" and $200 to "[m]embers admitted more than 3 years." https://www.lsba.org/Members/Memberdues.aspx.

25.    Lawyers who fail to pay bar dues to the LSBA are subject to discipline imposed exclusively by the Louisiana Supreme Court, including disbarment and revocation

of the privilege to practice law in the State of Louisiana. *See In re Fisher*, 24 So. 3d 191 (La. 2009); *In re Smith*, 17 So.3d 927 (La. 2009).

26.     As a licensed Louisiana attorney, Mr. Boudreaux is required to join the LSBA and to pay membership fees to the LSBA as a condition of engaging in his profession.

27.     Mr. Boudreaux has paid annual dues to the LSBA since approximately 1996 and must pay annual dues in the future if he chooses to continue practicing law in the state of Louisiana.

28.     Defendant Louisiana Supreme Court, through the Chief Justice and Associate Justices acting in their official capacities, enforce the Louisiana state laws, rules, and regulations mandating membership in and funding of LSBA as a prerequisite to practicing law in the State of Louisiana.

29.     Defendants act under color of state law when enforcing the LSBA membership requirement and collecting, disbursing, and spending mandatory dues.

**LSBA's Role**

30.     According to Article III, § 1, of its Articles of Incorporation, the LSBA's purpose is "to regulate the practice of law, advance the science of jurisprudence, promote the administration of justice, uphold the honor of the Courts and of the profession of law, encourage cordial intercourse among its members, and, generally, to promote the welfare of the profession in the State."

31.     The LSBA generally functions as an interest group or trade association, however, not as a regulatory body.

32.    The LSBA does not handle disciplinary matters for the regulation of the profession; a separate body established by the Louisiana Supreme Court, the Louisiana Attorney Disciplinary Board ("LADB") serves as the "statewide agency to administer the lawyer discipline and disability system," according to its website, https://www.ladb.org.

33.    All attorneys licensed in Louisiana must pay an annual "Assessment" to the LADB—separate from and in addition to their LSBA member dues—currently set at $170 for attorneys "admitted 3 years or less" and $235 for attorneys "admitted more than 3 years," according to the LSBA's fee information on its website, https://www.lsba.org/Members/Memberdues.aspx.

34.    The LSBA does not handle the admission or licensing of new attorneys. Such admissions are handled by the Louisiana Supreme Court Committee on Bar Admissions.

35.    The LSBA only recently took over the handling of continuing legal education and legal specialization, which previously was handled by a separate entity under the Supreme Court of Louisiana, the Louisiana Board of Legal Specialization.

**LSBA's Use of Mandatory Fees for Political and Ideological Speech**

36.    The LSBA uses members' mandatory dues to engage in speech, including political and ideological speech.

37.    The LSBA conducts "Legislative Advocacy" through a "Legislation Committee."

38.    Article XI, § 2, of the LSBA's Bylaws expresses the LSBA's desire to influence public policy through legislative advocacy; its criteria for the LSBA's

"legislative positions" include "[l]ikelihood of success within the legislative process" and whether the LSBA's issue lobbying will have "an impact on actions of decision-makers[.]"

39.     The Legislation Committee evaluates bills in part through "Policy Positions" adopted by the LSBA's House of Delegates.

40.     The LSBA has grouped its "Policy Positions" into categories that include not only "regulation of the practice of law" but also, among others, "criminal law," "civil law," and "miscellaneous" areas of law.

41.     The LSBA's "criminal law" Policy Positions include, among others, a resolution "urging [a] moratorium on executions in Louisiana until [the] state implements procedures providing for representation by counsel of all persons facing execution sufficient to ensure that no person is put to death without having their legal claims properly presented to the courts."

42.     The LSBA's "civil law" Policy Positions include a "resolution opposing: 1. The granting of civil immunities, except in cases where the public policy sought to be favored is sufficiently important, the behavior sought to be encouraged is directly related to the policy, and the immunity is drawn as narrowly as possible to effect its purpose; and 2. The creation of special rules favoring subclasses of parties in certain types of cases in contravention of our Civil Code and Code of Civil Procedure, unless a clear case is made of the need for these rules."

43.     The LSBA's "miscellaneous" policy positions include, among others, a resolution "strongly supporting a requirement for a full credit of civics in the high school

curriculum in the State of Louisiana, while eliminating the free enterprise requirement and incorporating those concepts into the civics curriculum."

44.    The LSBA's "miscellaneous" policy positions also include, among others, a resolution "[u]rging the adoption of laws prohibiting discrimination in employment, housing and accommodations for LGBT persons."

45.    The LSBA's Legislation Committee has taken positions on over 407 bills considered by the Louisiana legislature since 2007. In the last five years, the Committee offered positions on 10 bills in the 2019 regular session, 46 bills in the 2018 regular session, 18 bills in the 2017 regular session, and 39 bills in the 2016 regular session, and at least 23 bills in the 2015 regular session.

46.    The LSBA used its legislative advocacy arm to lobby in Baton Rouge against legal reform efforts such as reducing the threshold amount required to request a jury in a civil matter in 2014 and 2016, against requiring judges to file financial statements with the Board of Ethics in 2008 and 2015, and against efforts to allow school professionals with training and concealed carry permits to concealed carry in schools in 2013.

47.    According to its dues notice, the LSBA estimates that "3% of … LSBA Membership Dues" are devoted to "government relations" and "not deductible as a business expense for federal income tax purposes."

48.    The LSBA does not inform members of whether any past expenditures of member dues on "government relations" were germane to the purpose of improving the quality of legal services and regulating the legal profession.

49.    The "Policy Positions" and legislative advocacy described above are inherently political and ideological and constitute political and ideological speech by the LSBA.

**LSBA's Dues Refund Procedures**

50.    The LSBA does not provide members with sufficient information about its activities and expenditures to allow members to ensure that their mandatory dues are not used for activities that are not germane to improving the quality of legal services and regulating the practice of law as required by *Keller v. State Bar of California,* 496 U.S. 1 (1990).

51.    The LSBA's Bylaws allow a member to object to "the use of any portion of the member's bar dues for activities he or she considers promotes or opposes (sic) political or ideological causes" by filing a written objection with the LSBA's Executive director "within forty-five (45) days of the date of the Bar's publication of notice of the activity to which the member is objecting." LSBA By-Laws Art. XII, § 1(A).

52.    The LSBA Bylaws do not specify where or when this "publication of notice" is to occur.

53.    In fact, the LSBA does not publish notices of all of its activities, which means that members do not actually have an opportunity to object to the LSBA's various uses of their dues.

54.    The LSBA publishes an annual report showing its expenditures for the previous year, but it does not identify any specific expenditures the LSBA has made or proposed to make; it only identifies general categories of expenditures.

55.     Article XI, § 5, of the LSBA's Bylaws require the LSBA to "timely publish notice of adoption of legislative positions in at least one of its regular communications vehicles and [to] send electronic notice of adoption of legislative positions to Association members," but the LSBA's Articles of Incorporation and Bylaws do not otherwise require the LSBA to provide members with notice of the LSBA's political and ideological speech or its other activities.

56.     The LSBA therefore does not provide a meaningful, reasonable opportunity for members to determine the basis of the dues they are charged and object to expenditures that they believe violate their First Amendment right not to fund LSBA activities that are not germane to improving the quality of legal services and regulating the practice of law.

**Plaintiff's Injuries**

57.     Plaintiff Randy Boudreaux practices law in New Orleans. In 2019, he paid $200 in bar dues. He is required to pay future bar dues if he wishes to continue practicing law in the State of Louisiana.

58.     Plaintiff Randy Boudreaux opposes the laws, rules, and regulations of the State of Louisiana that compel him to associate with other lawyers and to associate with an organization against his will.

59.     He further opposes the LSBA's use of any amount of his mandatory dues to fund any amount of political or ideological speech, regardless of its viewpoint, including but not limited to the examples set forth above, but he has been without effective means to prevent it and without effective recourse.

60.     Louisiana's requirement that all attorneys join the LSBA injures Plaintiff Randy Boudreaux because he does not wish to associate with the LSBA, its other members, or its political and ideological speech. But for the requirement imposed by the laws, rules, and regulations of the State of Louisiana and enforced by the Louisiana Supreme Court, he would not be a member of the LSBA.

61.     Louisiana's requirement that all attorneys pay dues to the LSBA injures Plaintiff Randy Boudreaux because he does not wish to fund the LSBA's political and ideological speech and other activities. But for the requirement, he would not do so.

62.     The LSBA's lack of safeguards to ensure that members are not required to pay for political and ideological speech and other activities not germane to regulating the legal profession or improving the quality of legal services injures Plaintiff Randy Boudreaux because he does not want to fund such activities in any amount.

**Injunctive relief allegations**

63.     Plaintiff incorporates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint.

64.     Due to Defendants' enforcement of the challenged laws and rules, Plaintiff, and others similarly situated, are now and will continue to be denied the right to refrain from subsidizing LSBA's speech and/or the right to refrain from being members of LSBA as a condition of their practicing law in Louisiana.

65.     If not permanently enjoined by this Court, Defendants and their agents, representatives, and employees will continue to implement the challenged laws and rules and other similar policies and practices, which deprive Plaintiff of his constitutionally

protected rights to free speech and freedom of association. Thus the challenged laws and rules are now causing and will continue to cause Plaintiff to suffer irreparable injury, including but not limited to, deprivation of his freedom of speech and freedom of association rights. Plaintiff has no plain, speedy, and adequate remedy at law for such an injury.

66.     Accordingly, injunctive relief is appropriate.

**Declaratory relief allegations**

67.     Plaintiff incorporates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint.

68.     An actual and substantial controversy exists between Plaintiff and Defendants as to their respective legal rights and duties. Plaintiff contends, pursuant to 42 U.S.C. § 1983, that both on their face and as applied to Plaintiff, the challenged laws and rules violate the First and Fourteenth Amendments. Plaintiff is informed and believes, and on that basis alleges, that Defendants contend otherwise on all counts.

69.     Accordingly, declaratory relief is appropriate.

## <u>FIRST CLAIM FOR RELIEF</u>

**Compelled membership in the LSBA violates attorneys' First and Fourteenth Amendment rights to free association and free speech.**

70.     The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

71.     The First and Fourteenth Amendment protect not only freedom of association but also the freedom not to associate.

72.     The First and Fourteenth Amendment protect the freedom of speech, which includes the right to avoid subsidizing the speech of other private speakers and organizations.

73.     By its very nature, a mandatory bar association such as the LSBA violates these rights.

74.     Mandatory associations, particularly mandatory associations for expressive purposes, are permissible only when they serve a compelling state interest that the government cannot achieve through other means significantly less restrictive of First Amendment freedoms.

75.     The only state interests that a mandatory bar association can plausibly serve are regulating the legal profession and improving the quality of legal services.

76.     The state can readily use means significantly less restrictive of First Amendment freedoms than mandatory membership to regulate the legal profession and improve the quality of legal services.

77.     For example, the State of Louisiana could regulate the legal profession directly, or through an agency under its jurisdiction, without requiring attorneys to join or pay a bar association, as at least 18 other states do.

78.     By failing to utilize means significantly less restrictive of associational freedoms than a mandatory association, Defendants maintain and actively enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Randy Boudreaux of his rights of free speech and free association in violation of the First and Fourteenth Amendments.

79.     This deprivation of constitutional rights is causing Plaintiff Randy Boudreaux to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

80.     Plaintiff is entitled to declaratory and injunctive relief against Defendants' continued enforcement and maintenance of these unconstitutional laws, rules, regulations, practices, procedures, and policies, and is entitled to an award of attorneys' fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## SECOND CLAIM FOR RELIEF

**The collection and use of mandatory bar dues to subsidize the LSBA's speech, including its political and ideological speech, violates attorneys' First and Fourteenth Amendment rights to free speech and association.**

81.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

82.     The LSBA collects and uses mandatory bar fees to subsidize its speech, including its political and ideological speech as described above, without attorneys' affirmative consent.

83.     The LSBA provides no way for attorneys to avoid having their dues used to subsidize its speech, including its political and ideological speech.

84.     The state could readily serve its interest in improving the quality of legal services and regulating the legal profession without forcing attorneys to subsidize the LSBA's speech, including its political and ideological speech.

85.    The state could improve the quality of legal services and regulate the legal profession without requiring attorneys to fund a bar association at all. It could adopt measures to improve the quality of legal services and regulate the legal profession directly, or through an agency under its jurisdiction, as at least 18 other states do.

86.    Alternatively, Louisiana could require that the LSBA use mandatory bar dues only for regulatory activities, as California and Nebraska have done.

87.    Because the state could readily serve its interest in improving the quality of legal services in ways significantly less restrictive of free speech and association, the LSBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize *any* of its speech.

88.    Alternatively, the LSBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its political and ideological speech.

89.    At the very least, the LSBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its speech and other activities that are not germane to improving the quality of legal services and regulating the legal profession.

90.    Accordingly, to protect members' First Amendment rights, the LSBA must create an "opt-in" system for attorneys to subsidize its speech and non-germane activities; it cannot require attorneys to opt out. *See Janus v. AFSCME*, 138 S. Ct. at 2486.

91.    Unless an attorney provides affirmative consent, his or her dues cannot be used to subsidize the LSBA's non-germane activities or its speech, including but not limited to its political and ideological speech.

92.     Under existing law, Defendants maintain and enforce a set of laws, practices, procedures, and policies that are not adequate to ensure that mandatory dues will not be used for the impermissible purposes described above without attorneys' affirmative consent.

93.     Accordingly, Defendants are currently maintaining and actively enforcing a set of laws, practices, procedures, and policies that deprive Plaintiff Randy Boudreaux of his rights of free speech and free association in violation of the First and Fourteenth Amendments.

94.     This deprivation of constitutional rights is causing Plaintiff Randy Boudreaux to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

95.     Plaintiff Randy Boudreaux is entitled to declaratory and injunctive relief against Defendants' continued enforcement of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorneys' fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

<u>**THIRD CLAIM FOR RELIEF**</u>
**The LSBA violates attorneys' First and Fourteenth Amendment
rights by failing to provide safeguards to ensure mandatory dues
are not used for impermissible purposes.**

96.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

97.     To the extent mandatory bar fees are constitutional at all, the Supreme Court has required bar associations such as the LSBA to ensure that such fees are used only for activities germane to improving the quality of legal services and regulating the legal profession. *See Keller*, 496 U.S. at 14.

98.     To protect the rights of LSBA members and ensure mandatory member fees are used only for chargeable expenditures, *Keller* requires the LSBA to institute safeguards that provide, at a minimum: (a) notice to members, including an adequate explanation of the basis for the dues and calculations of all non-chargeable activities, verified by an independent auditor; (b) a reasonably prompt decision by an impartial decision maker if a member objects to the way his or her mandatory dues are being spent; and (c) an escrow for the amounts reasonably in dispute while such objections are pending. *Keller*, 496 U.S. at 14.

99.     As set forth above, the LSBA does not provide Plaintiff Boudreaux adequate information about its activities to allow him to determine whether his dues are being used appropriately and therefore does not provide an adequate explanation for the basis of his mandatory dues.

100.    Providing information about the LSBA's legislative positions alone, as the LSBA Bylaws require, does not satisfy the LSBA's obligation to explain the basis of members' dues because the LSBA may also engage in other activities, in addition to its legislative advocacy, that a member could challenge as not germane to improving the quality of legal services and regulating the practice of law.

101.    In addition, requiring members to constantly monitor LSBA publications for possible notices of political and ideological activity—rather than presenting information about the LSBA's use of member dues in a consistent, accessible format on a regular basis—imposes an unreasonable burden on members who wish to protect their First Amendment rights.

102.    The LSBA therefore does not afford Plaintiff Boudreaux any constitutionally adequate procedure to dispute the way his dues are spent.

103.    Therefore—even assuming mandatory bar membership and fees are constitutional at all—the LSBA fails to provide the minimum safeguards required by the First and Fourteenth Amendments before collecting and expending mandatory member dues.

104.    By failing to provide the minimum safeguards required by the First and Fourteenth Amendments before collecting and expending mandatory member dues, Defendants maintain and enforce a set of laws, practices, procedures and policies that deprive Plaintiff of his First and Fourteenth Amendment rights.

105.    This deprivation of constitutional rights is causing Plaintiff Boudreaux to suffer irreparable injury for which there is no adequate remedy at law. Unless enjoined by this Court, Plaintiff Boudreaux will continue to suffer irreparable harm.

106.    Plaintiff is entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, procedures and policies, and are entitled to an award of attorney fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## <u>REQUEST FOR RELIEF</u>

Wherefore, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and:

A.      Declare that Defendants violate Plaintiff's rights to freedom of speech and association under the First and Fourteenth Amendments by enforcing Louisiana statutes, rules, and regulations that make membership in the LSBA, association with its other members, and mandatory dues payment a condition of practicing law in Louisiana;

B.      Declare that Defendants may not require an attorney to pay mandatory dues or fees to subsidize the LSBA's speech, including its political and ideological speech or any of its non-germane activities, unless the member has affirmatively consented to having dues or fees used for those purposes, as required by *Janus,* 138 S. Ct. 2448;

C.      Permanently enjoin Defendants and all persons in active concert or participation with them from enforcing Louisiana Revised Statutes sections 37:211 (citing Act 54 of 1940) and 37:213, which mandates membership in the LSBA, and Rule 1.1(c) of the Louisiana Rules of Professional Conduct, which requires payment of membership fees to the LSBA;

D.      In the alternative, declare that Plaintiff's rights to freedom of speech and association under the First and Fourteenth Amendments are violated by the LSBA's failure to implement the minimum safeguards required by *Keller,* and preliminarily and permanently enjoin Defendants from collecting mandatory bar dues until the LSBA adopts the minimum safeguards *Keller* requires;

E.      Award Plaintiff Randy Boudreaux his costs, attorneys' fees, and other expenses as provided by law, including 42 U.S.C. § 1988; and

F.      Order such additional relief as may be just and proper.

Dated: August 1, 2019

**RANDY BOUDREAUX**

By: /s/ James S. C. Baehr
James S. C. Baehr, LSBA No. 35431
Alex J. Peragine, LSBA No. 19097
Pelican Center for Justice
Pelican Institute for Public Policy
400 Poydras St., Suite 900
New Orleans, LA 70130
Telephone: (504) 500-0506
james@pelicaninstitute.org
alex@plalaw.com

By: /s/ Dane S. Ciolino
Dane S. Ciolino, LSBA No. 19311, T.A.
DANE S. CIOLINO, LLC
18 Farnham Place
Metairie, LA 70005
dane@daneciolino.com
(504) 975-3263
https://daneciolino.com

Jacob Huebert (*pro hac vice* motion pending)
Timothy Sandefur (*pro hac vice* motion pending)
Scharf-Norton Center for Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiff*