## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

RANDY J. BOUDREAUX
      Plaintiff,


v.


LOUISIANA STATE BAR ASSOCIATION, a
Louisiana Nonprofit Corporation;
LOUISIANA SUPREME COURT;
BERNETTE J. JOHNSON, Chief Justice of the
Louisiana Supreme Court;
JOHN DOE, successor to the Honorable Greg
Guidry as Associate Justice of the Louisiana
Supreme Court for the First District;
SCOTT J. CRICHTON, Associate Justice of the
Louisiana Supreme Court for the Second District;
JAMES T. GENOVESE, Associate Justice of the
Louisiana Supreme Court for the Third District;
MARCUS R. CLARK, Associate Justice of the
Louisiana Supreme Court for the Fourth District;
JEFFERSON D. HUGHES, III, Associate Justice
of the Louisiana Supreme Court for the
Fifth District;
JOHN L. WEIMER, Associate Justice of the
Louisiana Supreme Court for the Sixth District,
      Defendants.

**CIVIL ACTION**

Case No. 19-cv-11962

SECTION "I" (1)

Judge Lance M. Africk

Mag. Judge van Meerveld

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

# TABLE OF CONTENTS

I.      Introduction .................................................................................................. 1

II.     Background ................................................................................................... 2

III.    Standard of Law ........................................................................................... 9

IV.     The Tax Injunction Act precludes federal court jurisdiction ......................... 9

V.      The Plaintiff has not exhausted his state court remedies ............................. 12

VI.     Principles of comity preclude federal court jurisdiction. ............................. 12

VII.    The Plaintiff lacks standing. ....................................................................... 14

VIII.   The Plaintiff's claims are either moot or not yet ripe .................................. 19

IX.     *Burford* abstention also requires the dismissal of the Complaint. ................ 20

X.      The Eleventh Amendment and legislative immunity require dismissal. .......... 24

XI.     Conclusion .................................................................................................. 26

# TABLE OF AUTHORITIES

**Statutes**

28 U.S.C. § 1341 ..................................................................................................... 9, 12
La. Civ. Code art. 1 ..................................................................................................... 7

**Rules**

Rule XIX § 16 ............................................................................................................. 12

**Cases**

*A Bonding Co. v. Sunnuck*, 629 F.2d 1127 (5th Cir. 1980) ........................................ 11
*Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951). .............................. 22
*Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). ...................... 24
*Bland v. McHann*, 463 F.2d 21 (5th Cir. 1972) ......................................................... 12
*Bogan v. Scott-Harris*, 523 U.S. 44 (1998).............................................................. 25
*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)............................................................ 20
*Christian Leadership Conference, Louisiana Chapter v. Supreme Court of State of Louisiana*,
   61 F. Supp. 2d 499 (E.D. La. 1999). ...................................................................... 24
*Clark v. Andrews Cty. Appraisal Dist.*, 251 F. App'x 267 (5th Cir. 2007) .................. 12
*Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997)................................................. 23
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006). ............................................. 18
*Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001)...... 9
*Edwards v. Transcon. Gas Pipe Line Corp.*, 464 F. Supp. 654 (M.D. La. 1979)......... 11
*Ex Parte Young*, 209 U.S. 123 (1908). ...................................................................... 24
*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981). ............. 13
*Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547 (5th Cir. 1980). ............................ 19
*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943). .......................... 13
*Green v. State Bar of Texas*, 27 F.3d 1083 (5th Cir. 1994). ....................................... 24
*In re Mundy*, 11 So. 2d 398 (La. 1942)................................................................ 10, 11
*In re Warner*, 2005-1303 (La. 4/17/09), 21 So. 3d 218 ............................................. 12
*Jackson v. Leake*, 476 F. Supp. 2d 515 (E.D.N.C. 2006) .......................................... 10
*Keller v. State Bar of California*, 496 U.S. 1 (1990) ............................................... 1, 17
*Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154 (1971)..... 22
*Leis v. Flynt*, 439 U.S. 438 (1979)............................................................................ 22
*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). .............................................. 13
*Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493 (5th Cir. 1986). ........................ 8, 10
*Lipscomb v. Columbus Mun. Separate School Dist.*, 269 F.3d 494 (5th Cir. 2001)...... 10
*Livingston v. N. Carolina State Bar*, 364 F. Supp. 3d 587 (E.D.N.C. 2019)............... 10
*Los Angeles v. Lyons*, 461 U.S. 95 (1983). ................................................................ 18
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................ 14
*Matthews v. Rodgers*, 284 U.S. 521 (1932) ............................................................... 13
*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015)................................. 21
*Normand v. Cox Commc'ns, LLC*, 848 F. Supp. 2d 619 (E.D. La. 2012) .................... 14

iii

*Paquet v. Fernandez*, 21 So. 591 (La. 1897) ............................................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ................................ 24

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ................................. 18

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). ............................................ 9

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26 (1976) ...................... 14

*Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Ass'n*, 378 So. 2d 423
 (La. 1979). .................................................................................................................... 22

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719(1980) ...... 25

*United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323 (5th Cir. 1979). ........................... 9

*United Transp. Union v. Foster*, 205 F.3d 851 (5th Cir. 2000). .................................... 19

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454
U.S. 464 (1982*)* ............................................................................................... 15, 16, 20

## I.       Introduction

The Plaintiff, Randy Boudreaux, has sued the LSBA, the Louisiana Supreme Court, and each of its Justices (collectively, the "Defendants"),[1] and asked that this Court declare the LSBA unconstitutional and enjoin the Defendants from enforcing the Louisiana statutes and bar rules mandating bar membership and the payment of dues.  The Plaintiff raises three broad challenges to the LSBA:

> Claim 1: Compelled membership in the LSBA violates attorneys' First and Fourteenth Amendment rights to free association and free speech.
>
> Claim 2: The collection and use of mandatory bar dues to subsidize the LSBA's speech, including its political and ideological speech, violates attorneys' First and Fourteenth Amendment rights to free association and free speech.
>
> Claim 3: The LSBA violates attorneys' First and Fourteenth Amendment rights by failing to provide safeguards to ensure mandatory dues are not used for impermissible purposes.

The Plaintiff and his attorneys have a cause about which they are passionate, and seek to limit the services of state-wide integrated bar associations or even end them entirely.[2]  But in his request for sweeping relief, the Plaintiff overlooks that, if he objects to some action by the Louisiana State Bar Association ("LSBA"), he can file an objection to the use of his dues for the objectionable action and request a refund, or he can oppose the action through participation in

---

[1] References herein to the "Defendants" or the "Justices" do not include "Justice Doe," the person whom the Complaint characterizes as "an individual whose identity is currently unknown, who will succeed the recently retired Hon. Greg Guidry as the Associate Justice of the Louisiana Supreme Court from Louisiana's First Judicial District."  Doc. 1, ¶ 15.

[2] An integrated bar is "an association of attorneys in which membership and dues are required as a condition of practicing law in a State."  *Keller v. State Bar of California*, 496 U.S. 1, 5 (1990). Deborah L. Rhode & Geoffrey C. Hazard, Jr., PROFESSIONAL RESPONSIBILITY AND REGULATION at 9 (2d ed. 2007) ("About two-thirds of the states have 'integrated' bars, which require  lawyers to belong to state bar associations as a condition of practice.").

LSBA proceedings, or file suit in state court.  Instead, he has elected to file a federal court lawsuit seeking an impermissible advisory opinion on the constitutionality of the LSBA.

This lawsuit demonstrates, however, the justification for the fundamental requirement that a determination of subject matter jurisdiction must precede any litigation on the merits.  For the reasons set forth herein,  the Court lacks subject matter jurisdiction over each of these claims, and the Complaint should be dismissed without prejudice pursuant to Rule 12(b)(1).

## II.    Background

### A.    History

The structure of the LSBA reflects 100 years of trial and error in creating an effective bar association for the benefit of Louisiana's bench, bar, and general public.  The history of the bar associations in Louisiana that predated the LSBA has been described as a "compelling tale of partisanship, statecraft, and skullduggery."[3]  A few events in that history provide necessary context for this Court's assessment of subject matter jurisdiction.[4]

Louisiana's first bar association began in 1847 with the New Orleans Law Association, a small group of New Orleans attorneys seeking to obtain professional advantages through the creation and use of a members-only library and through special relationships with the Legislature and Louisiana Supreme Court.[5]  At the turn of the century, the New Orleans Law Association gave

---

[3] Warren M. Billings, A Bar for Louisiana:  Origins of the Louisiana State Bar Association, Louisiana History: The Journal of the Louisiana Historical Association, Vol. 41, No. 4 (Autumn, 2000), pp. 389-401.

[4] The LSBA's unique history is particularly relevant in regard to the Defendants' arguments regarding comity; *Burford* abstention; and Eleventh Amendment, Judicial and Legislative Immunity, all as discussed *infra.*

[5] *See id.* at 340; *see also See* Marvelle Webber, Origin and Uses of Bar Associations, American Bar Association Journal, Vol. 7, No. 6 (June 1921), p. 297, available at https://www.jstor.org/stable/25700871?seq=1#metadata_info_tab_contents/  ("Organizations of the bar in this country . . . were county or city organizations, and formed more particularly for the purpose of professional advantage rather than with the broader view of public good . . . .").

way to the Louisiana Bar Association ("LBA").[6]   The LBA, like its predecessor, focused on providing its members with professional advantages over non-members.[7]   Notwithstanding its name, LBA's leadership was concentrated in New Orleans.[8]   Non-members, and particularly rural, older, and less educated attorneys, mistrusted the bar association's motives.[9]

In 1934, in response to certain political battles, Governor Huey P. Long's supporters created the State Bar of Louisiana ("SBL"), a mandatory membership bar association intended to "demolish the [LBA] and diminish the influence of Long's opponents on the supreme court."[10]   In "an act of spite," the SBL ordered the LBA from its Royal Street office and "forced the library's sale to a book dealer, who eventually scattered the collection."[11]

SBL's mandatory membership requirement removed (perhaps inadvertently) one of the obstacles to achieving a diverse bar.  Of course, the creation of SBL did not end Louisiana's history of racial preference in granting bar admission (and bar association membership).  Jim Crow laws and their legacy "kept the number of African-American lawyers to a mere handful" in Louisiana for decades.[12]   Louisiana's law schools, both public and private, refused to admit African-American students until the late 1940s, when the State created a new law school for African-American students rather than desegregate the state university.[13]   Some barriers to a diverse bar were overt, while others were subtle.[14]   Requiring that a bar association member be voted in or

---

[6] *See* Billings, p. 390.
[7] *See id.* at 393; *see also* Rhode & Hazard, *supra* note 1, at 19.
[8] *See* Billings, p. 393.
[9] *See id.* at 397.
[10] *See id.* at 398.
[11] *See id.* at 399.
[12] Rachel L. Emanuel, *History: Black Lawyers in Louisiana Prior to 1950*,  La. Bar J. Vol. 53, No. 2, p. 104.
[13] *See* Evelyn L. Wilson, *Access to Justice: Charles J. Hatfield*, 50 La. B.J. 114, 116-17 (2002).
[14] *See, e.g.*, Act 115 (1855) (limiting admission to "free white citizen[s]"), available at https://lasc.libguides.com/ld.php?content_id=19681549.

"introduced" by another member was one pretextual mechanism for excluding African-American lawyers from various bar associations.[15]  Similar subtle barriers prevented women from entering private practice.[16]

Despite the potential opportunities for progress and diversity afforded by mandatory membership, the SBL accomplished little else.[17]  After the assassination of Governor Long, the Louisiana Legislature voted to repeal the SBL.[18]  Louisiana again set its sights on achieving a bar association that would serve attorneys and the general public alike.  In 1940, the Legislature "memorialized" the Supreme Court to exercise its power by creating the LSBA, imposing a mandatory membership requirement, and authorizing the collection of member dues, the non-payment of which would be grounds for suspension from the practice of law.[19]  The Louisiana Supreme Court then promulgated a charter by issuing a rule on March 12, 1941, creating the Louisiana State Bar Association.[20]

### B.    Structure & Services

The LSBA's five officers are selected by its members, and rotating nominating committee districts ensure that no particular geographic dominates the leadership from year-to-year.[21]  Certain

---

[15] *See Camille Gravel, Jr.,* Excerpted from a Speech by the Honorable Ginger Berrigan, The Advocate, New Orleans Federal Bar Association, Fall Edition 2009, Vol. 19, No. 1, p. 2 (recounting that several white attorneys refused to introduce an African-American lawyer, who was able to attend law school only by going out of state, into a local bar association in 1945), available at http://www.nofba.org/wp-content/uploads/Advocate-Fall-2009.pdf

[16] While a few women were able to attend law school as early as the 1890s, it was not until 1937 that Tulane law school's valedictorian became the first woman attorney hired by a Louisiana law firm.  *See* Act 118 (1894), available at https://lasc.libguides.com/ld.php?content_id=20158813; *see also* Kimberley Singletary, State's first female lawyer turns 100, will speak at Tulane, The Advocate, May 15, 2013.

[17] *See* Billings, p. 399.

[18] *Id.* at 400.

[19] *See* La. R.S. 37:211 Reporter's Notes – 1950 (discussing Sections 2- 3 of Act No. 54 of 1940).

[20] *See id.*

[21] Articles of Incorporation, Art. VI, § 1-2.  Articles of Incorporation are  available at

LSBA affairs are administered by the Board of Governors, the composition of which includes representatives from different geographic districts.[22]  The House of Delegates is the LSBA's policy making body, and it includes 225 delegates, with representatives from each judicial district.[23]  Bar members in each district elect their delegates.[24]  All of LSBA's elective officers,  Board members, and delegates serve without compensation.[25]

The LSBA's stated purpose is to "regulate the practice of law, advance the science of jurisprudence, promote the administration of justice, uphold the honor of the Courts and of the profession of law, encourage cordial intercourse among its members, and, generally, to promote the welfare of the profession in the state."[26]  To those ends, the LSBA maintains a standing committee on the Rules of Professional Conduct with functions delegated to it by the Louisiana Supreme Court; maintains a broad and inclusive section structure on substantive law to promote education and practice improvement across 31 sections targeting specific fields of law and areas of interest; provides a mediation and arbitration service for the amicable resolution of disputes between clients and lawyers; sponsors the JLAP program to assist law students, lawyers and judges with a variety of issues (including substance abuse, aging, and mental health issues); sponsors a client assistance program for clients wronged by a lawyer who have no remedy; operates a member insurance program providing peer-reviewed access to business insurance solutions, including

---

https://www.lsba.org/documents/Executive/ArticlesIncorporation.pdf
[22] Articles of Incorporation, art. VII, § 1.
[23] Articles of Incorporation, art. VIII, §§ 1-2; *see also* LSBA House of Delegates 2019-2020 Roster, available at https://www.lsba.org/documents/HOD/1920HODRoster.pdf); LSBA House of Delegates Rules of Procedure, available at
https://www.lsba.org/documents/HOD/HODRulesOfProcedure.pdf (providing that the LSBA section chairpersons also are ex-officio members of the House of Delegates, with the same privileges and voting as House members).
[24] Articles of Incorporation, art. VIII, § 3.
[25] Articles of Incorporation, art. VII, § 8, VIII § 7.
[26] Articles of Incorporation, art. III, § 1.

malpractice insurance; and, a host of other activities that provide education, counseling and practice-assistance, all for the benefit of both attorneys and the general public.[27]

Pursuant to Louisiana Supreme Court Rule XXX, the LSBA also administers the Mandatory Continuing Legal Education program, but that is not the only way in which the LSBA works to improve the caliber of legal services offered to the public.  The LSBA's activities include providing all of the State's attorneys with a library of information, including online resources and through The Louisiana Bar Journal, which publishes articles on local practice, practice management, lawyers assistance, professionalism, discipline reports, recent developments, judicial notes, and legal community news.[28]

Another service provided by LSBA is its interaction with the Louisiana Legislature.  The LSBA's Legislation Committee is a standing committee consisting of fifteen members elected by and from the House of Delegates and ten members appointed by the President (with requirements to ensure that each nominating committee district is represented).[29]  The Committee's activities are limited to "matters consistent with the mission and purposes" of the LSBA, including "issues affecting the profession, the regulation of attorneys and the practice of law, the administration of justice, the availability and delivery of legal services to society, [and] the improvement of the courts and the legal profession."[30]  Recommendations for positions on pending legislation must be

---

[27] Information on each of these programs and services is available at https://www.lsba.org.  *See also* Rhode & Hazard, *supra* note 1, at 20.
[28] Bylaws, art. V, § I.   The Bylaws are available at https://www.lsba.org/documents/Executive/Bylaws2017.pdf.
[29] Bylaws, art. X, § 1(5).
[30] Bylaws, art. XI, § 1.

presented and approved by the Board of Governors pursuant to certain specific procedures.[31] Members are advised of the LSBA's legislative positions via publication and electronic notice.[32]

A June 2019 resolution from the House of Delegates suspended the Legislation Committee and all related activities until the January 2020 House of Delegates meeting.[33]  Nonetheless, the relationship between bar integration and the Legislation Committee itself has special significance in Louisiana.  "In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law."  La. Civ. Code art. 1, 1987 Rev. Cmt. c.  The primacy of legislation and the absence of the doctrine of *stare decisis* provide a unique and critical additional reason that both the Louisiana Supreme Court and the Legislature rely upon a single bar association that includes every Louisiana lawyer—i.e., an integrated bar for the benefit of Louisiana's citizens in the administration of Louisiana's system of justice.

Membership in the LSBA does not restrict attorneys from engaging in non-LSBA speech or bar association membership.  Members are free to take advantage of concurrent membership in other bar associations, including those that offer services and benefits tailored to particular interests or geographic areas.  LSBA members also are free to engage in political speech individually or through other organizations.

Any member of the LSBA who objects to the use of any portion of the member's bar dues for a cause that he or she considers political or ideological may file an objection.[34]  Once an objection is filed, the pro rata amount of the objecting member's dues devoted to the challenged activity is placed promptly in escrow while the Board of Governors determines whether it agrees

---

[31] Bylaws, art. XI, § 3.
[32] Bylaws, art. XI, § 5.
[33] LSBA Resolutions are available at https://www.lsba.org/BarGovernance/ HouseofDelegates.aspx.
[34] Bylaws, art. XII, § 1(A).

with the member's objection.[35]  Within 60 days, the Board of Governors will either provide a pro rata refund or refer the action to arbitration.[36]  Plaintiff has not alleged (nor can he) that the LSBA has refused refunds to members who have objected to an action of the Legislation Committee.

### C.    Funding

The LSBA is funded by member dues, which are considered a license tax.  *See In re Mundy*, 202 La. 41, 58, 11 So. 2d 398, 400-401, 403 (1942); *see also Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 498 (5th Cir. 1986).  Pursuant to Louisiana Supreme Court Rule 1.1(c), Louisiana attorneys must pay LSBA dues to maintain their eligibility to practice law.  The annual member dues for the LSBA are $80-200, depending upon how long a member has been admitted to practice law.[37]  Members who have been admitted to the LSBA for 50 years or more are exempt, and inactive members are not required to pay dues.[38]  The Board of Governors has authority to waive dues for members experiencing dire circumstances such as illness or financial hardship.[39]  Members in default of payment are given a delinquency notice; if a member fails to pay dues within 30 days, he or she ceases to be in good standing and the LSBA Treasurer certifies to the Louisiana Supreme Court that the delinquent member is ineligible to practice law.[40]

The Plaintiff's lawsuit seeks an advisory opinion from this Court on the constitutionality of the LSBA, but this Court lacks subject matter jurisdiction over the Complaint.  The Defendants respectfully request that the Complaint be dismissed without prejudice on this basis, for the reasons stated below.

---

[35] Bylaws, art.  XII, § 1(A).
[36] Bylaws, art. XII, § 1(A).
[37] Bylaws, art.  I, § 1.
[38] Bylaws, art. I, §§  2-3.
[39] Bylaws, art. I, § 3.
[40] Bylaws, art. I, § 4.

## III.     Standard of Law

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).   "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Rammings*, 281 F.3d at 161.  Accordingly, a plaintiff that files a lawsuit in federal court "constantly bears the burden of proof that jurisdiction does in fact exist."  *See id.*

## IV.     The Tax Injunction Act precludes federal court jurisdiction.

The Tax Injunction Act ("TIA") precludes federal court jurisdiction over the Plaintiff's claims regarding the collection of mandatory bar association dues.  The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  Federal courts have interpreted the TIA as "a broad jurisdictional impediment to federal court interference with the administration of state tax systems" rather than as a "narrow statute aimed only at injunctive interference with tax collection." *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979).  Moreover, the TIA "is a restraint on the court itself, not merely on the parties, and the parties by their consent may not subvert the statute's jurisdictional bar." *Id.* at 328 n. 6.

A.     **The mandatory membership dues in the Louisiana State Bar Association are considered taxes.**

The Plaintiff's Complaint attempts to restrain the assessment and collection of a tax on Louisiana's attorneys thorough mandatory membership dues in the Louisiana State Bar Association.  Since the LSBA's inception, bar dues have been understood to constitute a "license tax" upon the right to practice law.  *In re Mundy*, 11 So. 2d 398, 400 (La. 1942) ("The levying of dues by the Bar Association in a state which has adopted the so-called integrated bar is merely a form of levying a license tax upon the right to practice law."); *see also State ex rel. Paquet v. Fernandez*, 21 So. 591, 591 (La. 1897) (discussing pre-LSBA imposition of licensing tax on attorneys).  The Fifth Circuit has acknowledged that, in Louisiana, "bar association dues . . . are state license taxes, levied by express authority of the Louisiana state legislature in Act 54 of 1940." *See Lewis v. LSBA*, 792 F.2d 493, 498 (5th Cir. 1986) (citing *In re Mundy*, 11 So. 2d 398 (La. 1942)); *see also Lipscomb v. Columbus Mun. Separate School Dist.*, 269 F.3d 494, 500 n.13 (5th Cir. 2001) (Although federal law governs the determination of what is a "tax," federal courts can take note of determinations of a state's Supreme Court).

B.     **The Court lacks jurisdiction over the Complaint's challenge of this license tax.**

In a recent North Carolina case, *Livingston v. N. Carolina State Bar*, 364 F. Supp. 3d 587 (E.D.N.C. 2019), the district court held that mandatory annual District Bar dues[41] constituted a "tax" under the Tax Injunction Act and, accordingly, dismissed the plaintiff's § 1983 claim attacking the constitutionality of mandatory bar dues.  *Id.* at 594–95; *see also Jackson v. Leake*, 476 F. Supp. 2d 515, 522 (E.D.N.C. 2006) (holding with respect to a $50 surcharge collected from North Carolina attorneys to support a public campaign finance fund for judicial positions on the

---

[41] In North Carolina, the District Bar is a subdivision of the State Bar.

North Carolina Supreme Court and the North Carolina Court of Appeals, "pursuant to the Tax Injunction Act, this court lacks jurisdiction to enjoin the collection of the surcharge or enter a declaratory judgment as to its constitutionality").  The TIA also has been interpreted to preclude subject matter jurisdiction in constitutional challenges to other license taxes imposed under state law.  *See, e.g.*, *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1129 (5th Cir. 1980) (vacating a district court's judgment holding a Birmingham, Alabama bail bond license tax unconstitutional because the district court had no jurisdiction to entertain the case under the TIA).

This Court similarly lacks jurisdiction over the Complaint's challenge to mandatory bar dues because Louisiana provides a plain speedy and efficient remedy for attorneys to challenge this license tax in state court.  When LSBA's mandatory bar dues were first put in place by the Supreme Court (with the Legislature's "memorialization"), an attorney challenged them by writ of certiorari to the Louisiana Supreme Court.  The Court held that "[t]o say that such license taxes, or occupation taxes, in the form of annual dues levied by the Association, cannot be enforced because they deprive the attorneys of their freedom either to join or not to join the Association, is the same as to deny the authority of the state to organize the members of the bar into an integrated bar, under the state's police power and under the inherent power of the Supreme Court to regulate the practice of law."  *In re Mundy*, 11 So. 2d at 401.  If the Plaintiff and his counsel believe this holding should be overruled, they may assert this challenge in state court, just as in *Mundy*.

When a state court can adequately protect federal rights, a federal court has an equitable duty to refrain from exercising jurisdiction under the Tax Injunction Act.  *Edwards v. Transcon. Gas Pipe Line Corp.*, 464 F. Supp. 654, 660 (M.D. La. 1979) ("[A]s long as there is no reason to fear that any and all federal rights, whether under the United States Constitution or under federal statutes, will not be protected by the applicable State Court, the Federal Court must, in accordance

with its equitable duty, refrain from exercising jurisdiction over a matter involving the assessment, levy, or collection of a state tax in view of the Tax Injunction Act."). The Louisiana Supreme Court certainly is capable of assessing the constitutionality of state laws imposing license taxes on its lawyers. The Louisiana Supreme Court has, in the past, assessed the constitutionality of its own rules, and even overturned one of those rules on First Amendment grounds. *See In re Warner*, 2005-1303 (La. 4/17/09), 21 So. 3d 218, 262 (assessing the constitutionality of the Court's own rules and holding that Rule XIX §§ 16(A) and (I) violated the First Amendment of the U.S. Constitution). Louisiana's state courts can adequately protect the Plaintiff's rights, and this Court lacks jurisdiction over the Plaintiff's claims under the Tax Injunction Act, 28 U.S.C. § 1341.

## V.      The Plaintiff has not exhausted his state court remedies.

Section 1983 claims generally do not include an exhaustion requirement, but a plaintiff must exhaust available state remedies before pursuing a § 1983 claim challenging the constitutionality of a state tax. *See Clark v. Andrews Cty. Appraisal Dist.*, 251 F. App'x 267, 268-69 (5th Cir. 2007) (unpublished); *see also Bland v. McHann,* 463 F.2d 21, 24 (5th Cir.1972) ("We do not disagree with the general rule that exhaustion is not required in § 1983 cases; however, in this case § 1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances we are convinced that § 1341 must prevail."). The Plaintiff's failure to pursue available state remedies before filing this lawsuit also supports the dismissal of his Complaint.

## VI.     Principles of comity preclude federal court jurisdiction.

Even if the TIA were held not to apply to some of the claims presented in this matter, principles of comity, which are broader than the TIA's restriction on jurisdiction, weigh in favor of abstention by this Court. Principles of comity are central to our federal system. Without the

comity doctrine, state officers would be haled "into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim" contrary to "'[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.'"  *See Bland*, 463 F.2d at 24 (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)).  Principles of comity are especially salient in state tax cases.  In general, "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981).  This bar "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration."  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010).

The comity doctrine pre-existed the Tax Injunction Act and survives as a separate basis to decline federal jurisdiction.  Thus, six years after the passage of the Tax Inunction Act, the Supreme Court dismissed a challenge to Louisiana's unemployment compensation tax on comity grounds, holding that "federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states."  *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943).

The comity doctrine also is broader in scope than the Tax Injunction Act, and applies based on consideration of the following factors: "(1) plaintiffs seek review regarding matters over which the state enjoys wide regulatory latitude; (2) the claimed constitutional violation does not require heightened judicial scrutiny; (3) the plaintiffs seek aid in the federal court to improve their competitive position; (4) the state court is more familiar with state legislative preferences; and (5) the federal court's remedial options are constrained."  *Normand v. Cox Commc'ns, LLC*, 848 F. Supp. 2d 619, 625 (E.D. La. 2012) (Vance, J.) (reciting the *Levin* factors for application of the comity doctrine).

Each of the *Levin* factors counsels in favor of abstention under the comity doctrine in this case. Louisiana unquestionably enjoys wide regulatory authority over lawyers practicing in its courts and how it chooses to fund the resources provided through the Louisiana State Bar Association; there is no protected or suspect classification at issue here to invoke heightened judicial scrutiny; if the Complaint were successful, competitive advantages would reemerge among the Bar;[42] Louisiana's courts are more familiar with the legislative preferences underlying the current statutes and rules providing for an integrated bar; and Louisiana's courts are better positioned to remedy any violation that may be found—while this Court is limited in the relief that may be ordered both by the TIA and by the Eleventh Amendment.

## VII.    The Plaintiff lacks standing.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing has three components:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not  the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (citations, quotations, and modifications omitted). The requirement of "standing focuses on the party seeking to get his complaint before a federal court and not on the issues he

---

[42] *See supra*, Section II(A).

wishes to have adjudicated." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982*)* (quotation omitted).

One concern behind the standing requirement is ensuring "vigorous adversary presentation of the issues." *See People Organized for Welfare & Employment Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 172 (7th Cir. 1984) (Posner, J.) (citing Scott, *Standing in the Supreme Court—A Functional Analysis*, 86 Harv. L. Rev. 645, 674 (1973)).  The Plaintiff here does not appear to have a true stake in this fight.  His Complaint has yet to identify any LSBA position with which he disagrees.  Nonetheless, it could be argued that the Plaintiff's counsel, including members of an Arizona advocacy group that has staged a multi-state attack on integrated bar associations, has the requisite passion for litigating this issue.[43]  But counsel's commitment to a cause is no substitute for a cognizable injury by the litigant under Article III.

> In such a wealthy society as ours there is a great deal of money available for financing the promoters of causes, some of whom want to use the courts as well as public opinion and the legislatures to advance their goals. If passionate commitment plus money for litigating were all that was necessary to open the doors of the federal courts, those courts, already overburdened with litigation of every description, might be overwhelmed.

*See Thompson*, 727 F.2d at 172.  Standing ensures that cases are decided not in a "rarified atmosphere of a debating society," but instead a "concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *See id.* (quoting *Valley Forge Christian College* 454 U.S. at 472–73).  This case lacks the requisite concrete factual context, and the Plaintiff's claims should be dismissed for lack of standing.

---

[43] *See, e.g., Fleck v. Wetch*, No. 16-1564, 2019 WL 4126356, at *5 (8th Cir. Aug. 30, 2019) (rejecting First Amendment challenge to State Bar Association of North Dakota).

**C.     The Plaintiff does not have taxpayer standing.**

As set forth above, LSBA dues are considered a tax.  "[S]tate taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).  "State policymakers, no less than their federal counterparts, retain broad discretion to make 'policy decisions' concerning state spending 'in different ways . . . depending on their perceptions of wise state fiscal policy and myriad other circumstances.'"  *Id.*  at 356 (citation omitted).  In tax-challenge cases like this one, standing is absent because there is no concrete or particularized alleged injury, and any alleged future injury is not actual or imminent.  *Id.* at 344.

**D.     The Plaintiff does not allege that he disagrees with any of the LSBA's positions or that he has availed himself without success of available objection procedures.**

The Plaintiff lacks standing because he has not alleged an actual, concrete injury.  The Plaintiff's legal theory is that LSBA members cannot be compelled to fund speech with which they disagree.  Even assuming, for purposes of argument, that this presents a cognizable injury, the Plaintiff still lacks standing.  The Complaint identifies a handful of past LSBA resolutions in general terms, but it does not allege that the Plaintiff disagrees with any of these positions.[44]  A potentially cognizable injury is not enough; only those who are injured in fact have standing.  *See Sierra Club v. Morton*, 405 U.S. 727, 734-35.[45]

---

[44] Plaintiff never alleges that he raised an objection to any LSBA-related speech activity or requested a dues refund on that basis. Nor can he do so consistent with the historical record.

[45] In *Janus*, the petitioner, who had standing, was forced to subsidize a union despite the fact that "he opposes many of the public policy positions that it advocates." *Janus*, 138 S. Ct.  at 2461 (quotation omitted).  Although *Janus* did not address whether the petitioner would have had standing even if he supported such positions, the *Janus* opinion repeatedly emphasizes the disagreement between the petitioner's views and the speech at issue. *See, e.g.*, *id.* at 2463 ("views they find objectionable"); *id.* at 2464 ("ideas with which they disagree"); *id.* ("ideas they find objectionable").  For this reason (among others), *Janus* does not support standing for the Plaintiff's claim.  *See also Valley Forge Christian Coll. v. Americans United for Separation of Church &*

The Plaintiff also lacks standing because he has not availed himself of available state court procedures.  In *Keller v. State Bar of California*, 496 U.S. 1, 4 (1990), a unanimous opinion, the Supreme Court "agree[d] that lawyers admitted to practice in the State may be required to join and pay dues to the State Bar . . . ." The Court further concluded that an integrated bar association could comply with the First Amendment by providing, with respect to speech that may not be germane to the bar association's purpose, "an explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending"—steps now referred to as "*Keller* procedures."  *Id.* at 16 (quotation omitted).

The LSBA has *Keller* procedures through which members may claim a refund of dues.[46] The LSBA welcomes the Plaintiff to participate in those procedures.  These procedures have been successfully invoked by other objectors; the Plaintiff has not identified or alleged a single instance in which a *Keller* objection has been ignored or refused by the LSBA.  Plaintiff has no excuse[47] for failing to object or otherwise seek relief via existing state procedures.  The Plaintiff's failure to articulate any concrete and particularized injury deprives of him of standing.

---

*State, Inc.*, 454 U.S. 464, 472 (1982) ("Because[the requirement of standing] assures an actual factual setting in which the litigant asserts a claim of injury in fact, a court may decide the case with some confidence that its decision will not pave the way for lawsuits which have some, but not all, of the facts of the case actually decided by the court.").

[46] LSBA By-laws Art. XII § 1. As set forth in the concurrently-filed Motion to Dismiss Pursuant to Rule 12(b)(6), on the face of the Complaint, the LSBA's procedures fully comply with the standards in *Keller*.

[47] In *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005), the Fifth Circuit "excused" certain plaintiffs from pursuing state remedies relative to a bar admission policy because: (1) one of the plaintiffs had done so unsuccessfully; (2) the policy's "flat prohibition" on the requested relief made state remedies futile; and (3) the Louisiana Supreme Court had recently considered and rejected a challenge to the policy that was factually and legally similar.  None of these three factors is present here.

**E.      The Plaintiff cannot identify a cognizable future injury.**

The Plaintiff cannot identify any future imminent injury that would give him standing. *See Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983).  Put simply, the Complaint provides no basis on which to predict that the collection of dues from the Plaintiff will lead to the expenditure of these funds on speech to which the Plaintiff objects.  Each of the resolutions that he identifies as potentially objectionable (though he does not and did not actually object to any of them) has already been passed.  A resolution from the House of Delegates suspended the Legislation Committee and all related activities until the January 2020 House of Delegates meeting prior to the filing of the instant Complaint.  Hypotheses about what the LSBA may do in the future do not provide the Plaintiff with standing now.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 350 ("Ohio's General Assembly suspended the statutory budget mechanism that distributes franchise tax revenues to local governments in 2001. . . . Any effect that enjoining DaimlerChrysler's credit will have on municipal funds, therefore, will not result from automatic operation of a statutory formula, but from a hypothesis that the state government will choose to direct the supposed revenue from the restored franchise tax to municipalities."); *see also Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 245 (1952) ("In the first place, this dispute has not matured to a point where we can see what, if any, concrete controversy will develop. It is much like asking a declaration that the State has no power to enact legislation that may be under consideration but has not yet shaped up into an enactment.").  Standing does not exist because any alleged injury based on future conduct  is "conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  Plaintiff's claims present "precisely the sort of conjecture [courts] may not entertain in assessing standing." *DaimlerChrysler*, 547 U.S. at 350.

**VIII.   The Plaintiff's claims are either moot or not yet ripe.**

Insofar as the Plaintiff's Complaint is directed at past positions taken by the LSBA, his claims are moot.  Most of the conduct discussed in the Complaint already occurred.  *See, e.g.*, Doc. 1, ¶ 41 (citing a resolution from January 2000).  "Where the activities sought to be enjoined have already substantially occurred and the [court] can not undo what has already been done, the action is moot." *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547, 549 (5th Cir. 1980).  The Plaintiff's claims based on past conduct of the LSBA should be dismissed because they do not present any case or controversy.

Insofar as the Plaintiff challenges possible future conduct, his claims are not ripe. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).  "The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (quotation omitted).  "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.*

Any alleged injury, therefore, is purely speculative because the LSBA has suspended the activities of the Legislative Committee.  The Complaint can point to no political or non-germane position being advanced by the LSBA that the Court would be called upon to enjoin, and thus these claims are not ripe.[48]  Thus, the Plaintiff's allegations of future harm are necessarily vague, amorphous, and uncertain.  Moreover, the Plaintiff has failed to allege with specificity any

---

[48] Plaintiff alleges no facts that would excuse him from meeting the ripeness requirement. *See supra*, note 47.

hardship that he will suffer if the Court withholds consideration. The Plaintiff's generalized, non-specific allegations of potential future harm lack factual development and are not sufficiently ripe under Article III for the Court to adjudicate constitutional questions.

## IX.    *Burford* abstention also requires the dismissal of the Complaint.

Even if federal jurisdiction otherwise might exist, the Complaint should be dismissed pursuant to the doctrine of *Burford* abstention because a challenge to state policies on mandatory bar membership and a ruling by a federal court would be disruptive of Louisiana's inherently local efforts to establish a coherent policy with respect to the Louisiana bar—a matter of substantial concern for the bench, the bar, and the general public.

"*Burford* abstention is proper where timely and adequate state-court review is available and where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (citations and alterations omitted). "It is particularly desirable to decline to exercise equity jurisdiction when the result is to permit a State court to have an opportunity to determine questions of State law which may prevent the necessity of decision on a constitutional question." *Burford v. Sun Oil Co.*, 319 U.S. 315, 333 n.29 (1943) (internal citation omitted).  "The *Burford* line of cases reveals several factors that are relevant in making this determination: (1) whether the cause of action arises under federal or state law (2) whether the case requires inquiry into unsettled issues of state law or into local facts (3) the importance of the state interest involved (4) the state's need for a coherent policy in that area and (5) the presence of a special state forum for judicial review." *Wilson*, 8 F.3d at 314 (citations omitted).

The first factor weighs in favor of abstention.  The declaratory judgment claim, which is the core of the Plaintiff's complaint, seeks a ruling that the LSBA is unconstitutional.[49]  "Since a declaratory judgment action is inherently anticipatory," it is a federal claim only if the federal issue forms "part of the hypothetical well-pleaded complaint that the declaratory judgment defendant would have filed but for the anticipatory action."  *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015).  The hypothetical complaint against which the Plaintiff would be defending would be a state court proceeding relative to his eligibility to practice law had he refused to comply with his obligation to pay dues.  The Plaintiff's declaratory judgment claim does not present a federal question, but rather only a federal defense to a potential claim under state law for an anticipated refusal to pay LSBA dues.  *See id.* ("*[W]ith the sole exception of the stand-alone declaratory judgment cause of action*, there is federal question jurisdiction over the constitutional claims NiGen asserts under § 1983.") (emphasis supplied).  Thus, the Plaintiff's core claim should be considered as brought under state law, weighing in favor of abstention.  *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952) ("Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.").

The second factor weighs in favor of abstention because the Plaintiff's Complaint alleges that the Louisiana Supreme Court and the LSBA have misapplied their lawful authority to regulate the practice of law in the State by imposing an unconstitutional licensure tax, or are using the

---

[49] The Plaintiff's claim for injunctive relief presents a federal claim, but this is of little weight; *Burford* itself involved a claim that a state commission's order violated the federal Constitution. *See Burford*, 319 U.S. at 317; *see also DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th Cir. 1987) ("The fact that [plaintiff] sues based on federal law is not determinative of whether we should decline to exercise jurisdiction over the case.").

proceeds from that tax in a manner with which the Plaintiff may disagree. Any inquiry into a particular LSBA position and its relationship to LSBA's purpose requires examination of exclusively local facts. The need for familiarity with these distinctively local regulatory facts and policies, and the potential disruption to the LSBA by the Plaintiff's Complaint, warrant *Burford* abstention. *See Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 347-49 (1951).

The importance of the state interest (the third factor) is paramount. "Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions." *Leis v. Flynt*, 439 U.S. 438, 442 (1979). "Compulsory membership in an integrated bar in Louisiana is the result of the exercise of [the Supreme Court's] authority to regulate the bar." *Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Ass'n*, 378 So. 2d 423, 426 (La. 1979). The Louisiana Supreme Court's "inherent authority over the practice of law has been protected by the constitutional separation of powers in every constitution that this state has had, except that of 1868." *Id*. This factor weighs heavily in favor of *Burford* abstention.

The fourth factor also weighs in favor of abstention because there is a significant need for State-specific regulation of law practice. *See Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 167 (1971) (rejecting a First Amendment challenge to New York's character and fitness requirements for bar admission and reasoning that "the choice between systems like New York's and approaches like that urged by the appellants rests with the legislatures and other policy-making bodies of the individual States"). Requiring Louisiana's attorneys to belong to an integrated bar ensures that they are provided equal access to a variety of educational and professional resources that have the potential to increase the caliber of their practice and improve legal services for the public at large. Moreover, as a civilian jurisdiction,

both the State Legislature and the Supreme Court rely upon the LSBA as a resource to communicate with an integrated bar association led by attorneys from throughout the State. Attorneys still can communicate with the Court or the Legislature through other channels, including through specialty bars or through interest groups. But the LSBA serves a uniquely valuable role in presenting a representative perspective moderated and informed by the diverse views of the entire bar.

Fifth, there is a special state forum for review. The LSBA's *Keller* procedures allow the Plaintiff to challenge the disposition of his licensure dues. Moreover, the LSBA's annual meetings provide a venue at which the Plaintiff can express his position as to the use of LSBA funds. The LSBA welcomes the Plaintiff's viewpoint, as it does that of each LSBA member. Further, the state court system remains available to the Plaintiff. Thus, for example, in *Keller*, the plaintiff sought relief in California's state court system before seeking review by the U.S. Supreme Court. The Plaintiff's attempt to ignore such fora in his haste to obtain an advisory opinion on constitutional questions has no countervailing weight. This factor supports abstention. *See Clark v. Fitzgibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997) (affirming application of *Burford* abstention and observing, "[P]ermitting the Texas plaintiffs to proceed in federal court would undermine the comprehensive apparatus established by the state of Arizona for the orderly disposition of claims against insolvent insurance companies.").

Each of the *Burford* factors, therefore, supports abstention. The Plaintiff's Complaint demands an inquiry into the procedures and policies of the Louisiana government and its agents, and it attempts to circumvent the State's review procedures through an anticipatory declaratory judgment action. The Defendants respectfully request that the Court dismiss the Complaint pursuant to Rule 12(b)(1) on this additional basis.

X.      **The Eleventh Amendment and legislative immunity require dismissal.**

    A.      **The Eleventh Amendment divests the Court of jurisdiction.**

The Eleventh Amendment generally divests federal courts of jurisdiction to entertain lawsuits directed against states.[50] *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994). "Although by its terms the Amendment applies only to suits against a State by citizens of another State," the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). The Eleventh Amendment prohibits such suits regardless of whether the claim is based on federal or state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (The Eleventh Amendment applies "to state-law claims brought into federal court under pendent jurisdiction."). The Defendants are entitled to Eleventh Amendment protection. *See Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 497 (5th Cir. 1986); *S. Christian Leadership Conference, Louisiana Chapter v. Supreme Court of State of Louisiana*, 61 F. Supp. 2d 499, 505 (E.D. La. 1999).

The Plaintiff's Complaint requests prospective injunctive relief from the Defendants, presumably to trigger the well-known exception to Eleventh Amendment immunity under *Ex Parte Young*, 209 U.S. 123, 155–56 (1908). The *Ex Parte Young* exception allows a plaintiff to bring a suit for prospective injunctive relief only against "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, *and who threaten and are about to commence proceedings*, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal

---

[50] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

court of equity from such action." *Ex Parte Young*, 209 U.S. 123, 155–56 (1908) (emphasis supplied). The *Ex Parte Young* exception does not apply here, however, because the Plaintiff has neither failed to pay his LSBA dues, nor filed a *Keller* objection with the LSBA. The Defendants have not threatened and are not "about to commence proceedings" against him to enforce any of the statutes or rules addressed in his Complaint.[51] The Eleventh Amendment, therefore, divests this Court of jurisdiction over the Plaintiff's claims, and the *Ex Parte Young* exception as to his claims for prospective injunctive relief does not apply.

**B.      Legislative immunity bars the Plaintiff's claims.**

The Plaintiff challenges only the *potential* enforcement of laws and rules related to the collection of LSBA dues; thus, his Complaint is directed to Court (and the LSBA, as its agent) in its *legislative* capacity rather than its enforcement capacity.

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (internal quotation omitted). The U.S. Supreme Court has confirmed that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *See id.* at 55 (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 734 (1980) ("The Virginia Court is exercising the State's entire legislative power with respect to regulating the Bar, and its members are the State's legislators for the purpose of issuing the Bar Code. Thus the Virginia Court and its members are immune from suit when acting in their legislative capacity.")).

Although the Plaintiff purportedly seeks to "enjoin enforcement" of rules and statutes providing for mandatory bar dues, there is no enforcement action against him pending or contemplated. This request for an injunction is merely an attempt to plead around the Court's and

---

[51] *See* Doc. 1 at ¶¶ 22–23.

the LSBA's legislative immunity.  Plaintiff's allegation that the Defendants have failed "to implement minimum safeguards required by *Keller*,"[52] for example, is not a challenge to an enforcement action, but rather a challenge to the adoption of objection procedures different from those for which the Plaintiff advocates in his lawsuit.  The Defendants are entitled to absolute legislative immunity on these claims.  *See also Consumers Union*, 446 U.S. at 734 ("If the sole basis for appellees' § 1983 action against the Virginia Court and its chief justice were the issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit against appellants.").

## XI.   Conclusion

For the foregoing reasons, the Defendants respectfully request that the Complaint be dismissed without prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ *Eva J. Dossier*
Richard C. Stanley, 8487
Eva J. Dossier, 35753
Kathryn W. Munson, 35933
**STANLEY, REUTER, ROSS,**
 **THORNTON & ALFORD,** L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Facsimile:    (504) 524-0069
*Counsel for the Louisiana State Bar Association, Louisiana Supreme Court, Chief Justice Johnson, Justice Crichton, Justice Genovese, Justice Clark, Justice Hughes, and Justice Weimer*

---

[52] *See* Doc. 1 at p. 20, ¶ D.