## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANDY BOUDREAUX**                                          **CIVIL ACTION**

**VERSUS**                                                          **No. 19-11962**

**LOUISIANA STATE BAR**
**ASSOCIATION, ET AL.**                                          **SECTION I**

### ORDER & REASONS

Before the Court are defendants' motions to dismiss plaintiff Randy Boudreaux's ("Boudreaux") complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motions are granted in part as set forth herein.

### I.

On August 1, 2019, Boudreaux filed a complaint against the Louisiana State Bar Association ("LSBA"), the Louisiana Supreme Court, and its seven Justices, Bernette J. Johnson, Scott J. Crichton, James T. Genovese, Marcus R. Clark, Jefferson D. Hughes, III, John L. Weimer, and "John Doe," the individual who will succeed the Honorable Greg Guidry as an Associate Justice of the Louisiana Supreme Court from Louisiana's First Judicial District (collectively, the "defendants").[1] All of the Justices are sued in their official capacities.[2]

Boudreaux is a licensed attorney in the State of Louisiana and a member of the LSBA.[3] Pursuant to Louisiana law, Boudreaux must remain a member of the

---

[1] R. Doc. No. 1, at 3–4 ¶¶ 12–20.
[2] *Id.* at 4 ¶ 21.
[3] *Id.* at 6 ¶ 26.

LSBA and pay annual dues in order to continue practicing law in the State of Louisiana.[4] *See* La. R.S. § 37:211, § 37:213; La. R. Prof. Cond. § 1.1(c).

Boudreaux opposes the laws, rules, and regulations that compel him to associate with the LSBA and pay mandatory dues, as well as the LSBA's use of his mandatory dues "to fund any amount of political or ideological speech, regardless of its viewpoint[.]"[5] Boudreaux also contends that the LSBA has insufficient safeguards "to ensure that members are not required to pay for political and ideological speech and other activities not germane to regulating the legal profession or improving the quality of legal services[.]"[6]

Boudreaux asserts three claims against defendants. Boudreaux's first claim alleges that compelled membership in the LSBA violates his First and Fourteenth Amendment rights to free association and free speech.[7] Boudreaux's second claim alleges that the collection and use of mandatory bar dues to subsidize the LSBA's speech, including its political and ideological speech, violates his First and Fourteenth Amendment rights to free association and free speech, and is not necessary to regulate the legal profession or improve the quality of legal services in Louisiana.[8] Boudreaux's third claim alleges that the LSBA violates his First and Fourteenth Amendment rights by failing to provide adequate safeguards to ensure mandatory dues are not used for impermissible activities, i.e., activities that do not

---

[4] *Id.* at 6 ¶ 27.
[5] R. Doc. No. 1, at 11 ¶¶ 58–59; R. Doc. No. 19, at 13.
[6] R. Doc. No. 1, at 12 ¶ 62; R. Doc. No. 19, at 14.
[7] R. Doc. No. 1, at 13–15 ¶¶ 70–80.
[8] *Id.* at 15–17 ¶¶ 81–95.

serve the purpose of improving the quality of legal services through the regulation of the legal profession, without providing members with advance notice.[9]

Boudreaux seeks relief under 42 U.S.C. §§ 1983 and 1988, and the United States Constitution.[10] Boudreaux asks this Court to declare the LSBA's membership and annual dues requirements unconstitutional and enjoin defendants from enforcing La. R.S. §§ 37:211,[11] 37:213,[12] and Rule 1.1(c) of the Louisiana Rules of Professional Conduct,[13] which mandate these requirements.[14] Boudreaux seeks, in the alternative, a declaration that the LSBA's safeguards are inadequate under *Keller v. State Bar of California* to ensure that LSBA members have notice that their dues will be spent on speech that is nongermane to regulating the legal profession or improving the quality of legal services,[15] and that such inadequacy violates his First

---

[9] *Id.* at 17–19 ¶¶ 96–106.

[10] *Id.* at 3 ¶ 7.

[11] La. R.S. § 37:211 provides that the LSBA "is created and regulated under the rule-making power of the Supreme Court of Louisiana, pursuant to a memorial addressed to the court by the legislature in Act 54 of 1940."

[12] La. R.S. § 37:213 provides that only attorneys licensed by the Louisiana Supreme Court are permitted to practice law in the state.

[13] Louisiana Rule of Professional Conduct § 1.1(c) provides, in pertinent part, that "[a] lawyer is required to comply with all of the requirements of the Supreme Court's rules regarding annual registration, including payment of Bar dues[.]" Article XVI of the LSBA's Articles of Incorporation is the Louisiana Rules of Professional Conduct.

[14] R. Doc. No. 1, at 20 ¶¶ A–C. Boudreaux also seeks attorneys' fees pursuant to 42 U.S.C. § 1988(b). *Id.* at 21 ¶ E.

[15] In *Keller v. State Bar of California*, the United States Supreme Court held that an integrated bar association can comply with the First Amendment with respect to speech that may not be germane to regulating the legal profession and improving the quality of legal services, by providing bar members with "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." 496 U.S. 1, 16 (1990) (citing *Chicago*

3

and Fourteenth Amendment rights to freedom of speech and association.[16] Boudreaux seeks in connection with this alternative relief an injunction enjoining defendants from collecting mandatory bar dues until the LSBA implements the minimum safeguards required by *Keller*.[17]

Defendants filed motions to dismiss pursuant to Rules 12(b)(1)[18] and 12(b)(6),[19] which Boudreaux opposes.[20]

## II.

## A.

In Act 54 of 1940, the Louisiana state legislature issued a memorial to the state supreme court directing it to exercise its inherent powers to create the LSBA, impose a mandatory membership requirement, and provide a schedule of membership dues, the non-payment of which would be grounds for suspension from the practice of law. *Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 495 (5th Cir. 1986); *In re Mundy*, 202 La. 41, 11 So.2d 398 (1942). Pursuant to this memorial, the Louisiana Supreme Court issued an order stating:

> The Louisiana State Bar Association is hereby organized under the rule-making power of the Court. The rules and regulations which shall govern it as an agency of the Court are [the Articles of Incorporation].

---

*Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292, 310 (1986)). These safeguards have become known as "*Keller* procedures."
[16] R. Doc. No. 1, at 20 ¶ D.
[17] *Id.*
[18] R. Doc. No. 17.
[19] R. Doc. No. 12.
[20] R. Doc. Nos. 19, 20.

*Lewis*, 792 F.2d at 495. The LSBA's Articles of Incorporation were subsequently adopted as rules of the Supreme Court. *Id.*

The LSBA is an "integrated bar"—i.e., an association of attorneys in which membership and dues are required as a condition of practicing law—created under state law to regulate the state's legal profession.[21] The LSBA's stated purpose is to "regulate the practice of law, advance the science of jurisprudence, promote the administration of justice, uphold the honor of the Courts and of the profession of law, encourage cordial intercourse among its members, and, generally, to promote the welfare of the profession in the State."[22] The LSBA engages in a number of activities to serve its stated purpose.[23]

Pursuant to La. R.S. §§ 37:211, 37:213, Louisiana Rule of Professional Conduct § 1.1(c), and the LSBA's Articles of Incorporation and Bylaws,[24] Louisiana attorneys

---

[21] R. Doc. No. 12-2, at 4 (citing *Keller*, 496 U.S. at 5 (1990)).

[22] R. Doc. No. 17, at 9 (citing Articles of Incorporation, art. III, § 1).

[23] These activities include administering the state's mandatory continuing legal education program for attorneys; maintaining a standing committee on the Rules of Professional Conduct with functions delegated to it by the Louisiana Supreme Court; maintaining thirty-one "sections" related to different areas of law, which are devoted to "the improvement of professional knowledge and skill, and in the interest of the profession and the performance of its public obligations"; providing a mediation and arbitration service for the amicable resolution of disputes between clients and lawyers; sponsoring the Judges and Lawyers Assistance Program (JLAP) to assist law students, lawyers, and judges with a variety of issues, including substance abuse, aging, and mental health issues; sponsoring a client assistance program for clients wronged by a lawyer who have no remedy; operating a member insurance program providing peer-reviewed access to business insurance solutions; and providing all of the state's attorneys with a library of information, including online resources and access to the Louisiana Bar Journal, among other activities. *Id.* at 9–10.

[24] *See, e.g.*, Articles of Incorporation, art. V § 1 (requiring attorneys to annually register with the LSBA); Bylaws, art. I § 1 (setting the rates at which attorneys must pay dues); La. S. Ct. R. XIX, § 8(C) ("Each lawyer required by this rule to pay an

5

must register annually with the LSBA and pay dues to maintain their eligibility to practice law, with certain exceptions.[25] The annual member dues are $80 for members who have been admitted to the LSBA for three years or less, and $200 for members who have been admitted for more than three years.[26] Mandatory member dues fund the LSBA.[27]

The LSBA issues delinquency notices to members who fail to register within thirty days of receiving the LSBA's annual registration statement or are in default of payment.[28] A member has thirty days from receipt of a delinquency notice to register or pay outstanding dues before the LSBA Treasurer certifies to the Louisiana Supreme Court that he or she is ineligible to practice law.[29]

The Supreme Court is responsible for enforcing the LSBA membership and dues requirements and does so through the Louisiana Attorney Disciplinary Board.[30]

---

annual fee shall, on or before July 1st of each year, file with the [LSBA] a registration statement on a form approved by the Court.").

[25] R. Doc. No. 1, at 5 ¶ 22–23. Inactive members and members who have been admitted to the LSBA for fifty years or more are exempt. R. Doc. No. 17, at 12 (citing Bylaws, art. I, §§ 2–3). The Board of Governors also has authority to waive dues for members experiencing dire circumstances such as illness or financial hardship. *Id.* (citing Bylaws, art. I, § 3).

[26] R. Doc. No. 1 at 5 ¶ 24 (citing https://www.lsba.org/Members/Memberdues.aspx); R. Doc. No. 17, at 12 (citing Bylaws, art. I, § 1); R. Doc. No. 19, at 8.

[27] R. Doc. No. 17, at 12.

[28] *Id.* (citing Bylaws, art. I, § 4); Articles of Incorporation, art. V § 1; La. S. Ct. R. XIX, § 8(D).

[29] R. Doc. No. 17, at 12 (citing Bylaws, art. I, § 4); Articles of Incorporation, art. V § 1; La. S. Ct. R. XIX, § 8(D).

[30] R. Doc. No. 1, at 4 ¶ 13, 7 ¶ 32.

Lawyers who fail to register or pay annual dues may be disbarred and prohibited from practicing law in the State of Louisiana.[31]

## B.

The LSBA advises the Louisiana legislature of its positions on pending legislation through its Legislation Committee. Pursuant to the LSBA's Bylaws:

> The Legislation Committee's activities with respect to recommending consideration or adoption of a legislative position by the Association may include matters involving issues affecting the profession, the regulation of attorneys and the practice of law, the administration of justice, the availability and delivery of legal services to society, the improvement of the courts and the legal profession, and such other matters consistent with the mission and purposes of the Association. The Committee shall not involve itself in legislation which is ideological in nature, unrelated to the practice of law, or which is unnecessarily divisive.

Bylaws, art. XI, § I.

The LSBA's Bylaws set forth criteria to assist the Legislation Committee in connection with any recommendation to the LSBA that the committee may be considering relating to LSBA involvement, priorities, and implementation of legislative positions.[32] These factors include the position of the Legislation Committee relative to the "[i]mportance to the Bar, the legal profession, the administration of justice and to society as a whole," "[e]xpectations of the public, legislators, and members of the profession regarding the Bar's role in the particular issue involved," the level of support for the position within the profession, the

---

[31] *Id.* at 5–6 ¶ 25 (citing *In re Fisher*, 24 So. 3d 191 (La. 2009) and *In re Smith*, 17 So. 3d 927 (La. 2009)); *see also* La. Sup. Ct. Rule XIX § 9(a), 10A(1); La. R. Prof. Cond. § 1.1(c).

[32] R. Doc. No. 19, at 9.

"[l]ikelihood of success within the legislative process," whether the expertise of lawyers is uniquely helpful to understanding the issue, the currency of the issue, the image of the profession, the importance of the position to the practice of law, and the opportunity for impact.[33]

Recommendations for positions on pending legislation from the Legislation Committee must be presented to the Board of Governors, which can disapprove a position by a vote of at least seventy-five percent of the Board's members present and voting at the meeting.[34] Members are advised of the LSBA's legislative positions via timely publication "in at least one of [the LSBA's] regular communications vehicles" and by electronic notice.[35]

Boudreaux alleges that the Legislation Committee has taken positions on more than 407 bills considered by the Louisiana legislature since 2007.[36] Boudreaux further asserts that the Legislation Committee lobbied in Baton Rouge against certain legal reform efforts, such as reducing the threshold amount to request a jury in civil matters, requiring judges to file financial statements with the Board of Ethics, and allowing school professionals with training and concealed carry permits to carry weapons in schools.[37]

---

[33] R. Doc. No. 1, at 7–8 ¶ 38; Bylaws, art. XI, § 2.
[34] R. Doc. No. 17, at 10–11; Bylaws, art. XI, § 3. The Board of Governors of the LSBA is composed of representatives from different geographic districts. R. Doc. No. 17, at 8–9 (citing Articles of Incorporation, art. VII, § 1).
[35] R. Doc. No. 1, at 11 ¶ 55 (citing Bylaws, art. XI, § 5); R. Doc. No. 17, at 11 (same).
[36] R. Doc. No. 1, at 9 ¶ 45.
[37] *Id.* at 9 ¶ 46.

A member of the LSBA who "objects to the use of any portion of the member's bar dues for activities he or she considers promotes or opposes political or ideological causes" may file an objection with the Executive Director of the LSBA.[38] After a written objection has been received, the Executive Director must promptly determine the pro rata amount of the objecting member's membership dues devoted to the challenged activity, and place such amount in escrow pending the Board of Governors' determination of the merits of the objection.[39] Within sixty days, the Board of Governors will either give a pro rata refund to the objecting member or refer the action to arbitration.[40] Boudreaux does not allege that he has ever utilized the LSBA's dues refund procedure to object to legislative positions with which he disagrees.

Boudreaux notes that according to the LSBA's dues notice, three percent of membership dues are devoted to "government relations" and not deductible as a business expense for federal income tax purposes.[41] Boudreaux also highlights that the LSBA does not inform its members "whether any past expenditures of member dues on 'government relations' were germane to the purpose of improving the quality of legal services and regulating the legal profession."[42]

---

[38] *Id.* at 10 ¶ 51 (citing Bylaws, art. XII, § 1(A)); R. Doc. No. 17, at 11 (same).

[39] R. Doc. No. 17, at 11–12 (citing Bylaws, art. XII, § 1(A)).

[40] *Id.* at 12.

[41] R. Doc. No. 1, at 9 ¶ 47.

[42] *Id.* at 9 ¶ 48.

A June 2019 resolution from the LSBA's House of Delegates suspended the Legislation Committee and all related activities until the January 2020 House of Delegates meeting.[43]

### III. Rule 12(b)(1) Motion

The Court must first consider whether it has subject matter jurisdiction over Boudreaux's claims before reaching the merits of such claims. Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

When applying Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010).

When subject matter jurisdiction is challenged, the Court first considers whether the defendant has made a "facial" or a "factual" attack upon the complaint.

---

[43] R. Doc. No. 17, at 11.

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A motion to dismiss for lack of standing is factual rather than facial if the defendant submits affidavits, testimony, or other evidentiary materials." *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). When a defendant makes a factual attack on the complaint, the plaintiff is "required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523. In the case of a facial attack, the court "is required to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (quoting *Home Builders Ass'n*, 143 F.3d at 1010).

### A. Tax Injunction Act

Defendants argue that the Tax Injunction Act (the "TIA") precludes the Court from exercising jurisdiction over Boudreaux's claims.[44]  Under the TIA, a district court lacks jurisdiction over any action that would "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The TIA "imposes drastic limitations on the federal judiciary's ability to meddle with a local concern as important and sensitive as the collection of taxes."

---

[44] *Id.* at 13.

*Home Builders*, 143 F.3d at 1010 (citing *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981)).  Congress designed the TIA "expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004); *see also United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979) (explaining that federal courts have interpreted the TIA as "a broad jurisdictional impediment to federal court interference with the administration of state tax systems" rather than as a "narrow statute aimed only at injunctive interference with tax collection").

### *i.*

The Fifth Circuit employs a bifurcated analysis to determine whether the TIA bars federal jurisdiction:

> First, [it must be determined] . . . whether the law in question imposes a tax or merely a regulatory fee. Only if the law imposes a tax does the act preclude a federal district court from exercising jurisdiction. Second, even if the law imposes a tax for purposes of the Tax Injunction Act, a district court may decline to exercise jurisdiction only if the state court is equipped to furnish the plaintiffs with a plain, speedy, and efficient remedy. That is, the act does not divest district courts of jurisdiction if state court remedies are inadequate.

*Home Builders,* 143 F.3d at 1010 (citations omitted).

The Court's initial inquiry, therefore, is whether the LSBA's mandatory dues constitute a "tax" for purposes of the TIA. Boudreaux argues that the LSBA's mandatory dues are a "classic fee" and not a tax because they are not designed to increase the state's general revenue, but rather are a part of the state's regulatory scheme for the legal profession.[45] Defendants argue that the mandatory dues are a

---

[45] R. Doc. No. 19, at 16.

license tax, and assert that both the Louisiana Supreme Court and the United States Court of Appeals for the Fifth Circuit have previously held that bar association dues are state license taxes.[46]

"What constitutes a 'tax' for purposes of the Tax Injunction Act is a question of federal law." *Id.* at 1010 n.10 (citation omitted). "The label affixed to an ordinance by its drafters has no bearing on the resolution of the question." *Id.* (citation omitted). However, federal courts may consider the state supreme court's characterization of the payment at issue. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 500 n.13 (5th Cir. 2001). The Fifth Circuit provides several characteristics that differentiate a tax from a regulatory fee:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1011 (collecting cases); *see also Neinast v. Texas*, 217 F.3d 275, 278 (5th Cir. 2000) ("The classic fee is imposed (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes.") (citation omitted).

---

[46] R. Doc. No. 17, at 14.

*ii.*

Turning to the first factor, as numbered in *Neinast*, the Louisiana state legislature enacted the LSBA's mandatory dues requirement. Although the LSBA sets the rate at which members must pay dues, its authority to do so derives from the state legislature. As stated previously, the Louisiana state legislature issued a memorial to the Louisiana Supreme Court to create a bar association and impose mandatory dues. *See In re Mundy*, 202 La. 41, 11 So.2d 398 (1942) (holding that bar association dues are state license taxes levied by the express authority of the Louisiana state legislature in Act 54 of 1940). Furthermore, the Fifth Circuit does not view the LSBA as a state agency, but rather as an individual agent of the Louisiana Supreme Court. *Lewis*, 792 F.2d at 497 n.4. In connection with the first factor, the Court also considers the state supreme court's characterization of the dues as taxes. *In re Mundy*, 202 La. 41, 11 So.2d 398 (1942). Accordingly, this factor weighs in favor of a finding that the dues are a tax.

Turning to the second factor, only LSBA members, the people whom the LSBA regulates, must pay dues, rather than the public at large. This factor favors a finding that LSBA dues are a fee. *See Neinast,* 217 F.3d at 278 (holding that because the charge was imposed only on a narrow class of persons—disabled people wanting a handicapped placard—the second factor suggested that the charge was a fee).

The third factor, whether the purpose of LSBA dues are for general revenue raising purposes to provide a benefit for the entire community, or rather only to raise money to defray the LSBA's regulatory expenses, is significant. Stated differently,

the critical question is the ultimate use of the funds or purpose of the assessment. *See Neinast*, 217 F.3d at 278; *Henderson v. Stalder*, 407 F.3d 351, 357–58 (5th Cir. 2005); *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000) (holding that when the charge appears to fall somewhere in the middle of the spectrum between tax and fee, the most important factor becomes the purpose behind the statute or regulation which imposes the charge).

Fifth Circuit decisions analyzing the third factor provide guidance. In *Home Builders*, the Fifth Circuit held that an "impact fee ordinance" that required developers and builders in new residential areas to pay a fee for each planned residential dwelling unit was a tax because it was "designed to protect and promote the public health, safety and welfare of an entire community[.]" 143 F.3d at 1012. Pursuant to the preamble of the ordinance that imposed the assessment, its purpose was to ensure that developers and builders would pay their fair share of providing and maintaining essential municipal services, including streets, fire and police departments, and parks and recreation. *Id.* at 1009.

By contrast, in *Neinast*, the Fifth Circuit held that a state's $5.00 charge per handicapped placard was a fee because the state code mandated that such charges be deposited into the state highway fund to help defray the cost of providing the disabled parking placards. 217 F.3d at 278. That is, the state legislature did not impose the fee for general revenue-raising purposes—funds that would benefit the public at large—but rather for the specific purpose of funding the handicapped placards themselves.

15

In *Henderson*, the court found that Louisiana's specialty license plate registration fees were taxes. 407 F.3d at 357. The court reasoned that because the fees "exceed[ed] the ordinary motor vehicle registration fees . . . and an additional handling charge[,] they [were] not tied to vehicle regulation as such." *Id.* Pursuant to the Louisiana statutes implementing the charges, such charges would be used for a number of purposes ranging from park development to university education to adoption support. *Id.* at 358. These purposes provided a benefit to the public at large and were not "regulatory" as to the specialty plate purchasers. *Id.*; *see also American Council of Life Insurers v. District of Columbia Health Benefit Exchange Authority*, 815 F.3d 17, 19 (D.C. Cir. 2016) (noting that the key question is "whether a charge raises revenue merely to cover the cost of offering a service to the payers of the fee (including financing regulatory systems applicable to them), or whether it also raises revenue for purposes that aren't especially beneficial or useful to the payers").

The court in *Henderson* also noted that charges that are imposed to control certain activities, not to raise revenue, are more likely to be fees than taxes. *See Henderson*, 407 F.3d at 356 (citing *Hager v. City of West Peoria*, 84 F.3d 865, 871 (7th Cir. 1996) (holding that graduated fees on the weight of truckloads had been legislated to discourage heavy trucks from using a particular road and thus "were passed to control certain activities, not to raise revenue")).

Mandatory bar dues are imposed to fund the LSBA, that is, to defray the LSBA's costs—which seems to suggest that LSBA dues are fees. *Neinast*, 217 F.3d at 278. However, the LSBA's purpose, and thus the purpose of collecting dues,

encompasses more than the regulation of attorneys, *cf. id.*, or the control of certain behavior, *cf. Hager,* 84 F.3d at 871.[47] Importantly, attorneys, the group of people who must pay the tax and whom the LSBA regulates, are not the only people who benefit from the LSBA's purpose and activities. *Henderson*, 407 F.3d at 358; *American Council*, 815 F.3d at 19. Rather, the public at large benefits from key aspects of the LSBA's stated purpose—promoting the administration of justice, advancing the science of jurisprudence, and upholding the honor of Louisiana state courts. *See Jackson v. Leake*, 476 F. Supp. 2d 515, 522 (E.D.N.C. 2006), *aff'd*, 524 F.3d 427 (4th Cir. 2008) (holding that surcharges imposed on attorneys to fund the North Carolina Public Campaign Financing Fund were a tax, because the purpose of the Public Campaign Financing Fund benefitted the public at large, namely, to promote fair judicial elections and the impartiality of the state court system).

The LSBA engages in a number of activities that serve the entire community, rather than just licensed Louisiana attorneys. These activities include maintaining "sections," related to different areas of law, devoted to "the improvement of professional knowledge and skill, and in the interest of the profession and the performance of its public obligations"[48]; providing a mediation and arbitration service

---

[47] Boudreaux admits in his complaint that "[t]he LSBA generally functions as an interest group or trade association . . . not as a regulatory body." R. Doc. No. 1, at 6 ¶ 31.

[48] For example, the purpose of the Alternative Dispute Resolution Section, in part, is "to develop and promote reasonable dispute resolution alternatives to litigation for use by the public . . . [and] to educate the public . . . regarding such alternatives[.]" Bylaws, art. IX § 1(2).

for the amicable resolution of disputes between clients and lawyers; and sponsoring a client assistance program for clients wronged by a lawyer who have no remedy.[49]

Accordingly, having balanced all factors, the Court concludes that LSBA dues must be characterized as taxes for purposes of the TIA. *See Livingston v. North Carolina State Bar*, 364 F. Supp. 3d 587, 594 (E.D.N.C. 2019) (holding that bar dues are taxes under the TIA).[50]

### *iii.*

Although LSBA dues are considered taxes for purposes of the TIA, the Court may only decline to exercise jurisdiction if Louisiana state courts are equipped to furnish Boudreaux with a plain, speedy, and efficient remedy. *Home Builders*, 143 F.3d at 1010. Boudreaux does not challenge the adequacy or availability of a remedy in Louisiana state court, but the Court will nevertheless briefly address why such remedies are adequate.

As the Fifth Circuit explained in *Home Builders*:

State courts are equipped to furnish a plain, speedy, and efficient remedy if they provide a procedural vehicle that affords taxpayers the opportunity to raise their federal constitutional claims. That is, a state's remedy is adequate when it provides taxpayers with a complete judicial determination that is ultimately reviewable in the United States Supreme Court. Importantly,

---

[49] R. Doc. No. 17, at 9–10. The Court highlights these activities to illustrate its point that the LSBA funds activities that benefit the public at large. The Court also recognizes that the principal consideration is the *purpose* underlying the collection of LSBA dues, that is, to fund the LSBA's stated purposes, not the actual expenditure of such dues. *Home Builders*, 143 F.3d at 1011–12.

[50] Contrary to defendants' assertion, the Fifth Circuit did not hold in *Lewis* that LSBA dues were license taxes for purposes of the TIA. Rather, the Fifth Circuit relied upon the Louisiana Supreme Court's characterization of dues as taxes to determine that a judgment against the LSBA would be satisfied with public funds. 792 F.2d at 498.

though, the state remedy need not be the best of all remedies. It need only be adequate.

*Id.* at 1012 (citations and quotation omitted).

As a preliminary matter, the fact that Boudreaux challenges the constitutionality of the LSBA's imposition of mandatory dues to practice law does not overcome the jurisdictional bar created by the TIA, so long as Louisiana state courts offer Boudreaux an adequate remedy. *See Bland v. McHann*, 463 F.2d 21, 26–27 (5th Cir. 1972). "Taxpayers challenging a state tax must bring their claims in state court and seek review of claims of unconstitutionality under the United States Constitution by writ to the United States Supreme Court." *Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 533 (E.D. La. 2019) (Morgan, J.) (citing *Bland*, 463 F.2d at 24).

Louisiana law provides a legal remedy to plaintiffs challenging the constitutionality of a state tax in state court, as well as the ability to seek declaratory relief. La. R.S. § 47:1576(D); La. Code Civ. P. arts. 1871–72. These statutes provide taxpayers with complete judicial determinations that are ultimately reviewable in the United States Supreme Court. *See ANR Pipeline Co. v. La. Tax Com'n,* 646 F.3d 940, 947–48 (5th Cir. 2011). Therefore, Louisiana state court affords Boudreaux a plain, speedy, and efficient remedy.

### iv.

The TIA divests this Court of subject matter jurisdiction, though only as to Boudreaux's second claim, i.e., challenging the constitutionality of the collection of mandatory bar association dues. Boudreaux's second claim seeks to enjoin the

19

collection of state taxes, that is, LSBA dues.[51] Such a restraint on the collection of state taxes is the classic remedy that the TIA bars federal courts from providing when the state courts are equipped to furnish the plaintiff with a plain, speedy, and efficient remedy. *Henderson*, 407 F.3d at 359 (concluding that the TIA applies only where the "state taxpayers seek federal court orders enabling them to avoid paying state taxes") (internal quotations and emphasis omitted); 28 U.S.C. § 1341.

Defendants do not argue that the TIA similarly precludes jurisdiction over Boudreaux's first and third claims,[52] but the Court will briefly address why it retains jurisdiction over such claims.

The TIA precludes federal court jurisdiction only when the "primary purpose" of the lawsuit is to restrain the collection of taxes. *Muhammad v. United States*, No. 05-0812, 2005 WL 2001145, at *2 (E.D. La. July 15, 2005) (Lemmon, J.) (citing *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983)); *Pendleton v. Heard*, 824 F.2d 448, 451–52 (5th Cir. 1987). If the purpose of the suit has only an incidental connection to taxation, the TIA does not apply. *Peddleton*, 824 F.2d at 452 (citing *Linn*, 714 F.2d at 1282).

In *Peddleton*, plaintiffs challenged the county board of supervisors' practices of withdrawing notices of bond issues each time a protest was filed, rather than holding an election as required by state law, and noticing five separate bond issues in different districts instead of noticing a single bond issue county-wide. *Id.* at 451. Both

---

[51] R. Doc. No. 1, at 20 ¶ C.

[52] R. Doc. No. 17, at 13 ("The [TIA] precludes federal court jurisdiction over [Boudreaux's] claims regarding the collection of mandatory bar association dues.").

challenges were brought pursuant to Section 5 of the Voting Rights Act. *Id.* The Fifth Circuit held that the TIA did not divest federal courts of jurisdiction because plaintiffs were not challenging the bond issues themselves, but rather the obstruction of their right to vote on those bond issues. *Id.* Plaintiffs asserted that the board's practices created new voting practices or procedures which violated the Voting Rights Act, and thus sought to vindicate voting rights, not to impede the levy, assessment, or collection of state taxes. *Id.*

In connection with his first claim, Boudreaux seeks an injunction permanently enjoining defendants from enforcing the Louisiana statutes, rules, and regulations that compel membership in the LSBA. The primary purpose of Boudreaux's first claim is to challenge the constitutionality of mandatory association in the LSBA, not the imposition of LSBA dues. Boudreaux's first claim, if successful, would only enjoin defendants from compelling membership in the LSBA, not from collecting taxes. Any effect on the collection of LSBA dues would merely be incidental to Boudreaux's first claim. *See Linn*, 714 F.2d at 1282 (holding that the Anti-Injunction Act, which precludes federal courts from exercising jurisdiction to enjoin the collection of a federal tax, did not apply because the purpose of the suit was the recovery of unlawfully seized property, with only an incidental connection to taxation); *Pendleton*, 824 F.2d at 450. Thus, the primary purpose of Boudreaux's first claim is not to restrain the collection of taxes and it is not barred by the TIA.

In connection with his third claim, Boudreaux seeks an injunction permanently enjoining defendants from collecting mandatory bar dues until the

LSBA adopts the minimum safeguards required by *Keller*. The primary purpose of Boudreaux's third claim is to challenge the adequacy of the LSBA's *Keller* procedures—not to restrain the collection of taxes. Similar to the plaintiffs' claims in *Peddleton*, Boudreaux's third claim challenges not the taxes themselves, but rather the manner in which LSBA members may exercise their rights to object to the expenditures of such taxes. 824 F.2d at 451. Although Boudreaux's third claim, if successful, would enjoin the collection of LSBA dues, such restraint on the collection of taxes would be incidental to the claim's primary purpose and extend only until the LSBA's *Keller* procedures met minimum constitutional standards. Accordingly, the primary purpose of Boudreaux's third claim is not to restrain the collection of taxes and it is not barred by the TIA.

## B. Principles of Comity

Defendants argue that principles of comity preclude federal court jurisdiction over all of Boudreaux's claims, including those to which the TIA does not apply.[53] The Court will only consider defendants' argument as it pertains to Boudreaux's first and third claims, as the Court is precluded from exercising jurisdiction over Boudreaux's second claim pursuant to the TIA. "Under this doctrine, federal courts refrain from 'interfer[ing] . . . with the fiscal operations of the state governments . . . in all cases where the Federal rights of the persons could otherwise be preserved unimpaired.'" *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 15 (2015) (citing *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 422 (2010) (internal quotation marks omitted)).

---

[53] *Id.* at 16–18.

In *Levin*, the Supreme Court held that the comity doctrine is more expansive than the TIA. 560 U.S. at 417. The case involved a suit brought in federal court by natural gas marketers against the Ohio state tax commissioner challenging the constitutionality of three exemptions offered to their competitors only. *Id.* at 418. Although the TIA did not apply, the Supreme Court noted nevertheless that "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* at 421. The Court reasoned that "the Ohio courts are better positioned than their federal counterparts to correct any [constitutional] violation" because "when unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*." *Id.* at 426, 431–32 (emphasis in original). Thus, if the Ohio taxation scheme was unconstitutional, "surely the Ohio courts [were] better positioned to determine—unless and until the Ohio Legislature weigh[ed] in—how to comply with the mandate of equal treatment." *Id.* at 429 (citation omitted).

The Court was unclear about just how expansive the doctrine is, and in precisely what kinds of tax cases it is most pressing. *See Normand v. Cox Communications, LLC*, 848 F. Supp. 2d 619, 625 (E.D. La. 2012) (Vance, J.). The Court did, however, delineate several factors for federal courts to consider: first, whether the plaintiff seeks federal court review of matters over which the state enjoys wide regulatory latitude, such as commercial matters; second, whether the claimed constitutional violation involves "any fundamental right or classification that attracts heightened judicial scrutiny"; third, whether plaintiffs seek federal court aid "in an

23

endeavor to improve their competitive position"; and fourth, whether the state court is better positioned than its federal counterpart "to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options." *Levin*, 560 U.S. at 431–32 (distinguishing *Hibbs*, 542 U.S. at 93–94, which held that principles of comity did not bar the action, on the grounds that "state courts would have no greater leeway than federal courts to cure the alleged [constitutional] violation," because only one remedy would redress the plaintiffs' grievance in either state or federal court—invalidation of the allegedly unconstitutional tax credit); *see also Normand,* 848 F. Supp. 2d at 625.

In *Normand*, the defendant-corporation challenged the applicability of a Louisiana sales tax to its video programming services. 848 F. Supp. 2d at 620. The defendant had already pursued one of three available remedies under Louisiana law to challenge its unfavorable tax assessment, and the plaintiff-Parish, having determined that the defendant did not properly invoke the remedy, elected to initiate one of its three remedies under Louisiana law, a summary court proceeding, to enforce and collect sales tax owed. *Id.* at 620–22. The Parish then filed an action in state court to convert the final assessment into a court judgment executable against the defendant's assets outside of the Parish, and the defendant removed the case to federal court. *Id.* at 622.

The federal district court, analyzing each of the factors set forth in *Levin*, held that principles of comity counselled against exercising jurisdiction over the case, because entertaining such a suit would disrupt Louisiana's detailed framework and

24

streamlined process for adjudicating tax disputes. *Id.* at 624–27. Moreover, the court reasoned, exercising federal jurisdiction would allow out-of-state defendants to make an "end run around" this framework simply by refusing to pay their taxes, defaulting on their administrative rights, and removing the subsequent collection actions to federal court. *Id.* at 624. The summary court proceeding afforded to tax collectors under Louisiana law would cease to be an option. *Id.*

The first two *Levin* factors weigh in favor of abstention. Considering the first factor, states generally do enjoy wide regulatory latitude over attorneys licensed to practice law within the state. *See Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432–33 (1982). As to the second factor, Boudreaux's claims do not involve any fundamental right or classification that requires heightened judicial scrutiny. *See Levin,* 560 U.S. at 431 (abstaining when confronted with equal protection and dormant commerce clause claims); *Normand*, 848 F. Supp. 2d at 625 (abstaining when confronted with a due process claim); *Rainbod Trout Farms, Inc. v. Brownback*, No. 11-1290, 2012 WL 3879890, at *5 (D. Kan. Sept. 6, 2012) (abstaining when confronted with a First Amendment claim because such a claim would not require heightened judicial scrutiny).

The third and fourth factors, however, counsel against abstention. Plaintiff is not seeking federal court aid in an endeavor to improve a competitive position or completely foreclose a remedial option provided for by Louisiana law.[54] And, contrary

---

[54] Defendants argue that the third factor counsels in favor of abstention because if Boudreaux's claims are successful, "competitive advantages [will] reemerge among the Bar[.]" *Id.* at 18. It is unclear what competitive advantages defendants refer to

to defendants' argument, unlike the state courts in *Levin*, Louisiana courts are not better positioned than a federal court to remedy Boudreaux's alleged constitutional violations.[55]  Only one remedy would redress Boudreaux's grievances with respect to each claim: as to Boudreaux's first claim, an injunction prohibiting defendants from conditioning the right to practice law on membership in the LSBA and, as to Boudreaux's third claim, an injunction enjoining the LSBA from collecting dues until its *Keller* procedures satisfied minimum constitutional standards. *Levin*, 560 U.S. at 431.

Furthermore, there were other compelling reasons for abstention in *Levin* and *Normand* that are not present here. Exercising jurisdiction over Boudreaux's first and third claims and providing Boudreaux relief as to those claims, assuming such claims are successful, would not disrupt or interfere with Louisiana's detailed framework for streamlining and adjudicating tax disputes. *Cf. Normand*, 848 F. Supp. 2d at 624. The Court would not have to pursue the "ambitious solution" of "reshap[ing] the relevant provisions of [the state's] tax code." *Cf. Levin*, 560 U.S. at 429. Moreover, Boudreaux's claims do not involve state taxation of commercial activity, and Louisiana state courts are not better positioned than a federal court to determine whether the LSBA's compelled membership requirement and/or the inadequacy of the LSBA's *Keller* procedures violate Boudreaux's First and Fourteenth Amendment rights. *Cf. id.* at 421, 429.

---

and how such advantages are of the type contemplated by the Supreme Court in *Levin*.

[55] *Id.*

For the foregoing reasons, the Court declines to exercise its discretion to abstain from adjudicating Boudreaux's first and third claims based on principles of comity.

## C. Standing

Defendants next challenge Boudreaux's standing to bring his claims. The Court will only address defendants' standing argument as it pertains to Boudreaux's first and third claims because, for the reasons previously addressed, the Court lacks subject matter jurisdiction over Boudreaux's second claim. If Boudreaux lacks Article III standing as to either claim, the Court must dismiss that claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009). Boudreaux must show that the facts alleged, if proved, would confer standing upon him. *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998).

### i.

Article III of the U.S. Constitution limits federal jurisdiction to justiciable "Cases" and "Controversies." A plaintiff must have standing to meet the "case-or-controversy" requirement. *McCardell v. U.S. Dept. of Housing and Urban Development*, 794 F.3d 510, 516–17 (5th Cir. 2015). Without standing, a plaintiff's claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Additionally, "a plaintiff must demonstrate standing separately for each form of relief

27

sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Article III standing is established when a plaintiff has an injury that is: "(1) concrete, particularized, and actual or imminent ([a] so-called injury 'in fact'); (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling." *McCardell*, 794 F.3d at 517 (citing *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a plaintiff seeking injunctive relief to allege 'actual or imminent' and not merely 'conjectural or hypothetical' injury." *Frame v. City of Arlington,* 657 F.3d 215, 235–36 (5th Cir. 2011) (en banc). A plaintiff seeking injunctive relief also bears the additional burden of establishing a "real or immediate threat that the plaintiff will be wronged" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

### ii.

Boudreaux has standing to bring his first claim for relief. Boudreaux alleges that compelled membership in the LSBA violates his First and Fourteenth Amendment rights to free association and free speech, and that he is injured by such compelled membership because "he does not wish to associate with the LSBA, its other members, or its political and ideological speech."[56]

Boudreaux has successfully demonstrated a genuine threat of imminent future harm as to his first claim. It is undisputed that the LSBA requires membership in order to practice law in Louisiana, and that Boudreaux must remain a member of the

---

[56] R. Doc. No. 1, at 12 ¶ 60, 13–15 ¶¶ 70–80.

LSBA and continue to pay dues if he wishes to continue practicing law in the state. These requirements compel speech and association in a way that Boudreaux alleges are unconstitutional. He has thus alleged concrete and particularized harm. *See Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (holding that the plaintiff "unquestionably pleaded a constitutional injury" by alleging that the challenged statute required it to unwillingly associate with certain individuals) (citations omitted).

Moreover, these alleged constitutional violations will persist unless the law is changed or enforcement is enjoined. This continuing harm satisfies the cognizable future injury element of standing for a plaintiff seeking injunctive relief and establishes that Boudreaux's first claim is not moot,[57] as the injury is not speculative and is certain to recur in the future. *See Lyons*, 461 U.S. at 111; *Tex. Office of Public Utility Counsel v. F.C.C.*, 183 F.3d 393, 413–414 (5th Cir. 1999) (holding that a case becomes moot only if "there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation").

Boudreaux's first claim for relief is also ripe for review—the only remaining question is purely legal, and further factual development is not required.[58] *Orix*

---

[57] Defendants argue that Boudreaux's claims are moot because "[m]ost of the conduct discussed in the [c]omplaint already occurred." R. Doc. No. 17, at 23.

[58] Defendants argue that Boudreaux's claims are not ripe because the LSBA has suspended the activities of the Legislative Committee. *Id.* Such an argument is irrelevant to Boudreaux's first claim challenging the LSBA's mandatory association requirement.

*Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895–96 (5th Cir. 2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

Enforcement of La. R.S. §§ 37:211, 37:213 and Louisiana Rule of Professional Conduct § 1.1(c) causes the alleged burden on Boudreaux's constitutional rights, and enjoining their enforcement would redress those alleged constitutional harms. This connection to Boudreaux's alleged harm establishes causation and redressability, the final two elements of standing. *Lujan*, 504 U.S. at 560–61. Accordingly, the Court finds that Boudreaux has standing to bring his first claim for relief.

### iii.

Boudreaux does not have standing to bring his third claim for relief and, therefore, the Court must dismiss count three for lack of subject matter jurisdiction. *See Little*, 575 F.3d at 541. Boudreaux alleges that the LSBA fails to provide adequate safeguards to ensure that mandatory dues are not used for impermissible activities, i.e., activities that do not serve the purpose of improving the quality of legal services through regulation of the legal profession, and that such a failure violates his First and Fourteenth Amendment rights.[59]

Boudreaux argues that the LSBA's *Keller* procedures are insufficient for primarily two reasons: (1) they do not provide him with "adequate information about [the LSBA's] activities to allow him to determine whether his dues are being used appropriately," because the LSBA only provides information about its legislative

---

[59] R. Doc. No. 1, at 2 ¶ 5; 17–19 ¶¶ 96–106.

positions,[60] and (2) the LSBA imposes an unreasonable burden on members who wish to exercise their First and Fourteenth Amendment rights by objecting to the LSBA's legislative positions, because members must "constantly monitor LSBA publications for possible notices of political and ideological activity[.]"[61]

Defendants argue that Boudreaux lacks standing to bring this claim because he does not allege an actual, concrete injury, he has not availed himself of available state court procedures, that is, the LSBA's *Keller* procedures, and he cannot identity a cognizable future injury.[62] Defendants further argue that Boudreaux's failure to allege any specific past LSBA resolution with which he disagrees and/or his failure to have filed a *Keller* objection that was ignored or refused by the LSBA deprives him of standing.[63]

Boudreaux argues in response that whether he disagrees with any of the LSBA's resolutions is irrelevant to whether the state may force him to fund them, and "[w]hat matters is that he does not wish to *associate* with the LSBA and does not wish to pay for *any* of the LSBA's political speech, regardless of its viewpoint[.]"[64]

---

[60] *Id.* at 18 ¶¶ 99–100.

[61] *Id.* at 19 ¶ 101.

[62] R. Doc. No. 17, at 16, 20–22. Defendants also argue that Boudreaux lacks standing because LSBA dues are taxes, and "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *Id.* at 20 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006)). The Court need not address this argument, however, because Boudreaux lacks standing to bring his third claim on other grounds, as discussed *infra*.

[63] *Id.* at 20–21.

[64] R. Doc. No. 19, at 21.

Boudreaux invokes *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 876 (1998) for the proposition that he is not required to object to the LSBA's use of his mandatory dues through its *Keller* procedures before initiating suit in federal court.[65] In *Air Line Pilots*, the Supreme Court held that a nonunion employee was not required to exhaust the union's procedures prescribed by *Hudson,* 475 U.S. at 310 before challenging the union fee in federal court. 523 U.S. at 875–77. The Supreme Court adopted the procedures outlined in *Hudson* for bar associations in *Keller*.[66]

Even assuming that the reasoning of *Air Line Pilots* applies in the context of a challenge to an integrated bar association's use of mandatory bar dues, and thus that Boudreaux was not required to object to any use of his dues via the LSBA's *Keller* procedures before filing suit in federal court, Boudreaux still has not alleged an injury in connection with his third claim that is concrete, particularized, and actual or imminent. In *Air Line Pilots*, the Supreme Court ultimately found unpersuasive the defendant-union's argument that it would not have clear notice as to which of its expenditures a plaintiff opposed unless the plaintiff was first required to exhaust *Hudson* procedures. *Id.* at 878. The court reasoned that a federal-court plaintiff cannot "file a generally phrased complaint, then sit back and require the union to prove the 'germaneness' of its expenditures without a clue" as to which expenditures

---

[65] *Id.* at 23.

[66] Boudreaux also argues that he was not required to bring his claims via the LSBA's *Keller* procedures because such procedures would not have provided him with the opportunity to challenge the sufficiency of the procedures themselves. *Id.* The Court need not resolve this issue because, as discussed *infra*, Boudreaux lacks standing to bring his third claim on other grounds.

the plaintiff opposed. *Id.* "Agency-fee challengers, like all other civil litigants, must make their objections known with the degree of specificity appropriate at each stage of litigation their case reaches[.]" *Id.*

The same reasoning applies here. Although Boudreaux may not have been required to object via the LSBA's *Keller* procedures before proceeding in federal court, he cannot file a complaint generally challenging the sufficiency of the LSBA's *Keller* procedures without establishing that he has personally suffered a concrete and particularized injury that is actual or imminent.

Boudreaux's first alleged injury, that the LSBA is violating his First and Fourteenth Amendment rights because its *Keller* procedures fail to provide him with information regarding "other activities" that the LSBA "*may* [be] engage[d] in" that he "*could* challenge as not germane to improving the quality of legal services and regulating the practice of law," is merely hypothetical.[67] The possibility that the LSBA could be engaging in activities with which Boudreaux could disagree does not establish that he has suffered, or is subject to a real or imminent threat that he will suffer, an actual or imminent injury. Boudreaux does not identify any activity for which he had no notice that the LSBA actually engaged in, funded by his mandatory dues, that he would have objected to had he had notice that the LSBA was going to engage in such an activity. Boudreaux similarly does not identify any of the LSBA's legislative resolutions with which he disagrees, or allege that had he had sufficient advance notice of a particular resolution, he would have objected to such resolution.

---

[67] R. Doc. No. 1, at 18 ¶ 100 (emphasis added).

Boudreaux's second alleged injury, that the LSBA's *Keller* procedures place an undue burden on members' abilities to protect their First Amendment rights because the LSBA does not provide members with information regarding its proposed legislative positions "in a consistent, accessible format on a regular basis,"[68] is similarly hypothetical and not sufficiently concrete or particularized to provide Boudreaux with standing. Boudreaux alleges that "requiring members to constantly monitor LSBA publications for possible notices of political and ideological activity" imposes "an unreasonable burden on *members* who wish to protect their First Amendment rights."[69] Boudreaux does not allege that the LSBA's *Keller* procedures have placed an undue burden on *him* that has made it difficult for *him* to protect his First Amendment rights. Alleging that *other* members of the LSBA may *possibly* be facing an undue burden does not establish that Boudreaux himself is suffering from a concrete injury. *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (quoting *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166 (1972)) ("[A] plaintiff 'may not seek redress for injuries done to others.'"). Boudreaux likewise fails to establish a real or immediate threat that *he* will be wronged in the future by this alleged undue burden.

Boudreaux fails to allege an injury in fact that is fairly traceable to defendants' challenged actions and redressable by this Court, and thus lacks standing to assert his third claim for relief. Boudreaux's third claim is dismissed pursuant to Rule

---

[68] *Id.* at 19 ¶ 101.
[69] *Id.* (emphasis added).

12(b)(1) of the Federal Rules of Civil Procedure. Accordingly, the Court need not resolve defendants' other arguments for dismissal of Boudreaux's third claim.

### D. *Burford* Abstention

Defendants argue that the Court should exercise its discretion to abstain from this matter pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).[70] Boudreaux argues in opposition that a challenge to a state bar rule does not present the "difficult questions of state law" required for *Burford* abstention.[71] The Court will only address defendants' argument as it pertains to Boudreaux's remaining claim, count one, challenging the constitutionality of compelled membership in the LSBA.

The *Burford* abstention doctrine allows federal courts to dismiss a case only if it presents:

> [D]ifficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726–27 (1996) (citations and quotation omitted).

The *Burford* line of cases reveals several factors that are relevant in making this determination: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a

---

[70] R. Doc. No. 17, at 24–27.
[71] R. Doc. No. 19, at 26 (citing *LeClerc v. Webb*, 270 F. Supp. 2d 779, 795 (E.D. La. 2003) (Zainey, J.), *aff'd*, 419 F.3d 405 (5th Cir. 2005)).

coherent policy in that area; and (5) the presence of a special state forum for judicial review. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993). The Court is not persuaded that it should abstain from this matter because four of these factors weigh against abstention.

Defendants argue that the first factor weighs in favor of abstention because Boudreaux's declaratory judgment claim is "the core of [his] complaint," and such a claim arises under state law.[72] Defendants assert that Boudreaux's declaratory judgment claim "does not present a federal question, but rather only a federal defense to a potential claim under state law[.]"[73] Defendants acknowledge that Boudreaux's claim for injunctive relief presents a federal question, but argue that this is of little weight because *Burford* itself involved a claim that a state commission's order violated the federal Constitution.[74]

"'A suit arises under the law that creates the cause of action.'" *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (2015)). "Since a declaratory judgment action is inherently anticipatory," for a suit to arise under federal law, "the federal issue must form part of the hypothetical well-pleaded complaint that the declaratory judgment defendant would have filed but for the anticipatory action." *Id.* (citation omitted). "Where . . . a plaintiff brings a declaratory judgment claim pursuant to 28 U.S.C. §§ 2201 and 2202, in applying the well-pleaded complaint rule [the Court

---

[72] R. Doc. No. 17, at 25.

[73] *Id.*

[74] *Id.* at n.49.

must] ask whether 'if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'" *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008) (quoting *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 19 (1983)) (citing *TTEA v. Ysleta del Sur Pueblo,* 181 F.3d 676, 681 (5th Cir.1999)).

Boudreaux's declaratory judgment claim seeks to resolve whether defendants may constitutionally enforce the LSBA's mandatory membership requirement, that is, whether such a requirement complies with the First and Fourteenth Amendments. If the Louisiana Supreme Court, LSBA, and Justices—the declaratory judgment defendants—brought an action to enforce the mandatory membership requirement pursuant to La. R.S. §§ 37:211, 37:213 and Louisiana Rule of Professional Conduct § 1.1(c), such an action would arise exclusively under state law. Although Boudreaux also seeks a declaration that these state laws are violative of the First and Fourteenth Amendments, such a claim arises as an anticipatory federal defense to a state law cause of action. *See id.*

However, contrary to defendants' assertion, Boudreaux's declaratory judgment claim is not "the core of his complaint," and does not make the fact that Boudreaux's claim for injunctive relief arises under federal law irrelevant. In *Burford*, plaintiffs asserted state law claims challenging an order of the Texas Railroad Commission and argued that the order denied them due process of law. 319 U.S. at 317. "The constitutional challenge was of minimal federal importance, involving solely the

question whether the commission had properly applied Texas' complex oil and gas conservation regulations." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 360 (1989) (discussing *Burford*, 319 U.S. at 331). "The *Burford* Court repeatedly emphasized that state law issues were predominant and that the federal constitutional claim bordered on the frivolous." *Sierra Club*, 112 F.3d 789, 799 n.2 (5th Cir. 1997) (Benavides, J., dissenting) (citing *Burford*, 319 U.S. at 325, 328); s*ee also Wilson*, 8 F.3d at 314 n.3 ("Although Burford itself involved federal and state law claims, the federal constitutional issue was not substantial.") (citation omitted).

Unlike in *Burford*, the constitutional issue—whether the LSBA's mandatory association requirement violates the First and Fourteenth Amendments—is the only issue that must be decided as to Boudreaux's first claim for declaratory and injunctive relief. Accordingly, because Boudreaux's declaratory judgment claim does not require the application of complex state regulation and the sole issue arises under federal law, this factor weighs against abstention.

Second, the case does not involve a "difficult question of state law" or inquiry into local facts, because the interpretation of La. R.S. §§ 37:211, 37:213, and Louisiana Rule of Professional Conduct § 1.1(c) compelling membership in the LSBA is not at issue. Rather, the only issue is whether that requirement is constitutional. *LeClerc*, 270 F. Supp. 2d at 795 (holding that because the meaning of the challenged Louisiana Supreme Court rule was not at issue, and the only issue was whether that rule was in conflict with certain federal laws, *Burford* abstention did not apply). Therefore, this factor weighs against abstention.

The third factor, the importance of the state interest, is the only factor that weighs in favor of abstention. Defendants correctly recognize that this lawsuit involves questions of substantial state concern, as the licensing and regulation of lawyers is a matter in which Louisiana has substantial interests.[75] *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."); *LeClerc*, 270 F. Supp. 2d at 795 (noting that "bar admission is distinctly a matter in which Louisiana has substantial interests" and that the Louisiana Supreme Court "has unique knowledge and familiarity with the considerations at stake when licensing lawyers").

Turning to the fourth factor, although declaring the LSBA's mandatory association requirement unconstitutional and enjoining the enforcement of such requirement would disrupt the LSBA's operations, the LSBA's regulation of attorneys is not similarly complex to those regulatory schemes that courts have held compel abstention due to the state's need for a coherent policy in those areas.[76] *Burford*, 319

---

[75] *Id.* at 26.

[76] The cases defendants cite in support of their argument that state regulation of bar governance "is recognized as an important [s]tate interest sufficient to support abstention" are unpersuasive because they are distinguishable from the case at hand. R. Doc. No. 27, at 11. *See Middlesex Cty.*, 457 U.S. at 434–35 (abstaining on the basis of *Younger v. Harris*, 401 U.S. 37 (1971), because state attorney disciplinary proceedings were pending); *Castellanos-Bayouth v. Puerto Rico Bar Ass'n*, 483 F. Supp. 2d 167, 173 (D.P.R. 2007) (same); *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm. of State Bar of Texas*, 283 F.3d 650, 655 (5th Cir. 2002) (abstaining from exercising jurisdiction to interpret a Texas statute forbidding the unlicensed practice of law and rule on its federal constitutionality because there was a lack of state court precedent on the issue).

U.S. at 316–34 (abstaining from exercising federal jurisdiction because of the complexity, volume, and interdependence of oil cases, and because federal intervention would result in needless confusion and conflict with the state system); *Sierra Club v. City of San Antonio*, 112 F.3d 789, 794 (5th Cir. 1997) (holding *Burford* abstention applicable because "there is a need for unified management and decision-making regarding the aquifer, since allowing one party to take water necessarily affects other parties"); *Felmeister v. Office of Attorney Ethics, a Div. of the New Jersey Administrative Office of the Courts*, 856 F.2d 529, 534 (3d Cir. 1988) (holding *Burford* abstention inapplicable to an action challenging the constitutionality of attorney advertising rules on free speech grounds because the case did "not present the sort of complex, technical, regulatory scheme to which the *Burford* abstention doctrine usually is applied"). Accordingly, this factor counsels against abstention.

The fifth and final factor also counsels against abstention because there is not a special state forum for judicial review of Boudreaux's claim. *See Burford*, 319 U.S. at 320, 325–27 (observing that the regulatory commission had primary jurisdiction, with a special system of centralized judicial review). Defendants argue that the LSBA's *Keller* procedures provide a special state forum for review because such procedures allow Boudreaux to challenge the disposition of his licensure dues.[77] Such an argument is irrelevant to Boudreaux's first claim, challenging the constitutionality of the mandatory membership requirement.

---

[77] R. Doc. No 17, at 27.

Defendants also argue that "the LSBA's annual meetings provide a venue at which [Boudreaux] can express his position as to the use of LSBA funds[,]" and the state court system is available.[78] The LSBA's annual meetings clearly would not provide Boudreaux with the relief he seeks. Likewise, defendants' argument that the state court system is a special state forum for review is illogical. It is the presence of a special system—besides that of just the state court system—which weighs in favor of abstention.

Accordingly, the Court declines to exercise its discretion to abstain from Boudreaux's first claim pursuant to *Burford*.

### E. Eleventh Amendment

Defendants next argue that the Eleventh Amendment of the United States Constitution divests this Court of subject matter jurisdiction over Boudreaux's claims.[79] Because the Court lacks subject matter jurisdiction over Boudreaux's second and third claims for the reasons previously discussed, the Court will only consider defendants' argument as it pertains to Boudreaux's first claim.

"[T]he Eleventh Amendment generally bars suits in federal court by a citizen of a state against his state or a state agency or department." *Word of Faith World*

---

[78] *Id.*

[79] *Id.* at 28–29. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

*Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 965 (5th Cir. 1993) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) and *Hirtz v. Texas,* 974 F.2d 663, 665 (5th Cir. 1992)). The Fifth Circuit has previously recognized that the LSBA is an individual agent of the Louisiana Supreme Court and may invoke Eleventh Amendment protection. *See Lewis,* 792 F.2d at 497. Similar relief is available to the Louisiana Supreme Court itself. *Southern Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 783 n.2 (5th Cir. 2001) ("[I]t is well established that the Eleventh Amendment protects state supreme courts[.]") (citation omitted).

However, where state officials are sued in their official capacities, the doctrine of *Ex parte Young* may operate as an exception to the Eleventh Amendment (the "*Young* exception"). Under *Ex parte Young*, the Eleventh Amendment does not bar a suit for injunctive relief against state officials in their official capacities alleged to be acting in violation of federal law. *Word of Faith*, 986 F.2d at 965 (citing *Ex parte Young,* 209 U.S. 123 (1908)).

Defendants do not argue that the Eleventh Amendment bars suits for prospective injunctive relief against state officials in their official capacities to enjoin federal constitutional violations.[80] Rather, defendants assert that Boudreaux's suit is barred because defendants have not threatened and are not about to commence

---

[80] R. Doc. No. 17, at 28–29.

proceedings against him to enforce any of the statutes or rules addressed in his complaint.[81]

Two analyses help determine whether the *Young* exception applies to the relevant state official. *Paxton*, 943 F.3d at 998. First, the court must conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)). Next, the court must "also decide whether the official in question has a 'sufficient connection [to] the enforcement' of the challenged act." *Id.* (quoting *Young*, 209 U.S. at 157) (citation omitted).

Boudreaux's complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. He asserts that the Louisiana statutes and Louisiana Supreme Court rule mandating membership in the LSBA to practice law in the state violates the United States Constitution, and he seeks only injunctive and declaratory relief, not a money judgment or any other retrospective relief.[82] *See Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) (holding that state bar association officials were not entitled to immunity under the Eleventh

---

[81] *Id.* Defendants do not specifically argue that the Louisiana Supreme Court or the LSBA is immune from suit pursuant to the Eleventh Amendment. Rather, defendants argue that the Louisiana Supreme Court is not a proper defendant because it is not a juridical entity. R. Doc. No. 12-2, at 16–17. The Court addresses this argument in section IV.B.

[82] Boudreaux also seeks attorney's fees pursuant to 42 U.S.C. § 1988(b). R. Doc. No. 1, at 21 ¶ E. Such fees are not barred by the Eleventh Amendment. *Jones v. Texas Juvenile Justice Dept.*, 646 F. App'x 374, 377 n.15 (5th Cir. 2016) (citing *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)).

Amendment in a suit challenging the constitutionality of the Michigan Bar Association's rules governing admissions); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233–34 (10th Cir. 2001) (holding that members of the Colorado State Board of Law Examiners were not entitled to immunity under the Eleventh Amendment from a lawsuit challenging the constitutionality of a bar admission requirement mandating that bar applicants disclose certain personal information).

Next, the Justices of the Louisiana Supreme Court have a sufficient connection to the enforcement of La. R.S. §§ 37:211, 37:213, and Louisiana Rule of Professional Conduct § 1.1(c). What constitutes a sufficient "connection to enforcement" is not clear from Fifth Circuit jurisprudence. *See Paxton*, 943 F.3d at 999 (noting that panels in the Fifth Circuit are split as to whether the official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" or, rather, whether the state officer only must have some connection with the enforcement of the statute) (quoting *Okpalobi*, 244 F.3d at 416); *Air Evac*, 851 F.3d at 518. The Court need not resolve which standard *Ex parte Young* requires, because the Justices fall within the *Young* exception under either formulation.

The Court rejects the argument that defendants must have threatened to commence proceedings or must have been about to commence proceedings against Boudreaux in order to trigger the *Young* exception.[83] Direct enforcement of the challenged law by state officials is not required to apply the *Young* exception. *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736–37

---

[83] *See* R. Doc. No. 17, at 29.

(1980) (holding that the law has not developed so as to force plaintiffs to await the institution of state-court proceedings against them in order to assert their federal constitutional claims under *Ex parte Young*); *Paxton*, 943 F.3d at 1001. "To the extent that *Ex parte Young* requires that the state actor 'threaten' or 'commence' proceedings to enforce the unconstitutional act, state defendants' pervasive enforcement [will] satisf[y] that test." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Division of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. at 156). "Panels in this circuit have defined 'enforcement' as 'typically involv[ing] compulsion or constraint." *Paxton*, 943 F.3d at 1000 (*quoting K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)) (citation omitted).

In *Air Evac*, an air-ambulance company alleged that a state workers' compensation statute that set the maximum allowable reimbursement amount for medical services was preempted by federal law. 851 F.3d at 510–13. The air-ambulance company sought to employ the *Young* exception to sue the Texas Commissioner of Insurance and the Texas Commissioner of Workers' Compensation. *Id.* The state officials in question engaged in "rate-setting" under the workers' compensation statute and oversaw the initial arbitration process for fee disputes. *Id.* The Fifth Circuit held that the air-ambulance company could invoke the *Young* exception to sue the state officials for injunctive relief because the officials "constrain[ed] [the air-ambulance company's] ability to collect more than the maximum-reimbursement rate under the [workers' compensation statute] . . . [and]

effectively ensur[ed] the maximum-reimbursement scheme [was] enforced from start to finish." *Id.* at 519.

In *K.P.*, the Fifth Circuit considered whether the Louisiana Patients' Compensation Fund Oversight Board (the "Board") had the requisite "connection [to] the enforcement" of the challenged statute to subject them to suit under the *Young* exception. 627 F.3d at 124 (citation omitted). The statute removed the medical malpractice cap for abortion providers. *Id.* at 119–120. The Board oversaw malpractice claims lodged against physicians enrolled in the Patient Compensation Fund and had denied plaintiffs coverage for an abortion-related malpractice claim in accordance with the challenged statute. *Id.* The court held that because the Board was required to differentiate between permissible and impermissible claims under the challenged statute, it took an "active role" in enforcing the statute and had the requisite connection to enforcement so as to fall within the *Young* exception. *Id.* at 125.

The Justices of the Louisiana Supreme Court constrain Boudreaux's ability to practice law in the State of Louisiana without associating with the LSBA because they take an "active role" in enforcing the LSBA membership requirement. The LSBA certifies to the Supreme Court those members who are in bad standing and ineligible to practice law for failing to timely register. Articles of Incorporation, art. V § 1. The Louisiana Supreme Court is responsible for initiating disciplinary proceedings and sanctioning members who fail to comply with the registration requirement and may disbar such members. La. S. Ct. R. XIX §§ 9(a), 10A(1).

Relatedly, the Louisiana Supreme Court's authority to sanction members who fail to register establishes that the Justices have the particular duty to enforce the registration requirement. *See Okpalobi*, 244 F.3d at 416. The Louisiana Supreme Court has also consistently demonstrated its willingness to punish attorneys who fail to comply with the Louisiana Rules of Professional Conduct. *See, e.g., In re Bell,* 2019-1345 (La. 11/5/19), 281 So.3d 650 (disbarring a member who violated several rules of professional conduct); *In re Cortigene*, 2013-2022 (La. 2/14/14), 144 So.3d 915 (temporarily enjoining an unlicensed attorney from seeking full admission to the LSBA because he engaged in the unauthorized practice of law); *In re Pitre*, 2005-0853 (La. 6/17/05), 903 So.2d 1130 (disbarring a member who represented clients despite his ineligibility to practice law as a result of his failure to pay dues and other violations of the Louisiana Rules of Professional Conduct). The Justices, therefore, have a sufficient connection to the enforcement of the LSBA's mandatory association requirement to fall within the *Young* exception.

Defendants additionally argue that the Eleventh Amendment bars Boudreaux's claim because he must first submit his challenge to the constitutionality of the LSBA's mandatory association requirement to the LSBA and Louisiana Supreme Court.[84] Defendants cite *Consumers Union* in support of this argument.[85]

In *Consumers Union*, the district court twice continued the case so that the Virginia Supreme Court and state bar could consider amending its state bar code in

---

[84] R. Doc. No. 27, at 12–13.
[85] *Id.*

light of the American Bar Association's proposed amendments, which would have rendered plaintiffs' challenge moot.[86] 446 U.S. at 726. The Virginia Supreme Court and state bar decided not to adopt the proposed amendments and instead determined that it would enforce the challenged rule. *Id.*

The United States Supreme Court held that the Eleventh Amendment did not shield the Chief Justice of the Virginia Supreme Court from suit and that such a suit could proceed pursuant to *Ex parte Young* because the Virginia Supreme Court had independent enforcement authority to initiate disciplinary proceedings against attorneys. *Id.* at 736–37. The court never indicated that absent providing the Virginia Supreme Court and state bar an opportunity to amend the challenged rule, the district court would not have had jurisdiction.

Because the LSBA and Louisiana Supreme Court have not made an affirmative decision to enforce the mandatory membership requirement rather than amend it, as the Virginia Supreme Court did in *Consumers Union*, defendants argue, defendants are not threatening or about to commence proceedings against Boudreaux and the *Young* exception is inapplicable.[87]

As previously mentioned, the Louisiana Supreme Court has demonstrated its willingness to sanction members who violate the Louisiana Rules of Professional Conduct, which encompasses the mandatory membership requirement. La. R. Prof.

---

[86] Plaintiffs challenged a Virginia Bar Code rule that prohibited lawyers from providing certain detailed information in legal directories regarding their business practices on First Amendment grounds. *Consumers Union*, 446 U.S. at 725–26.
[87] R. Doc. No. 27, at 12.

Cond. § 1.1(c). And, notably, defendants have not alerted the Court to any pending amendments to the LSBA Articles of Incorporation, Bylaws, or Louisiana Supreme Court rules that would render Boudreaux's challenge moot.

Accordingly, because the Justices enforce the laws that Boudreaux challenges as unconstitutional, they are subject to suit for injunctive relief pursuant to the *Young* exception, and the Eleventh Amendment does not bar Boudreaux's first claim.

### F. Legislative Immunity

Defendants argue that the Justices are entitled to absolute legislative immunity because Boudreaux challenges only the potential enforcement of laws and rules related to membership in the LSBA.[88] Accordingly, defendants assert, Boudreaux's complaint is directed to the Justices in their legislative rather than enforcement capacities.[89]

Boudreaux argues that legislative immunity does not apply because he does not challenge the Justices' legislative actions in promulgating Louisiana bar rules, but rather seeks an injunction to bar defendants from enforcing such rules.[90] The Court will address defendants' argument only as it pertains to Boudreaux's remaining claim.

"[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions[.]" *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citation omitted). When exercising its sovereign rule-making authority, a

---

[88] R. Doc. No. 17, at 29.
[89] *Id.*
[90] R. Doc. No. 19, at 29.

state supreme court occupies the same position as that of the state legislature. *Lewis*, 792 F.2d at 497 (citing *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)). Like legislators, the members of the state's highest court are entitled to absolute legislative immunity in conjunction with promulgating bar admission rules. *Consumers Union,* 446 U.S. at 734. Thus, legislative immunity would foreclose any suit based upon the issuance of, or failure to amend, a challenged bar admission rule. *Id.*

However, the United States Supreme Court has held that when a state supreme court "performs more than a legislative role with respect to [state bar rules]," and "has independent enforcement authority of its own," the state supreme court and its members are proper defendants in a suit for declaratory and injunctive relief. *Id.* at 734–36.

Boudreaux challenges the constitutionality of La. R.S. §§ 37:211, 37:213, and Rule 1.1(c) of the Louisiana Rules of Professional Conduct and seeks to enjoin their enforcement. None of his claims are directed at the Justices' roles in having promulgated such bar registration requirements, but rather are directed at their roles in enforcing such requirements. As previously discussed, the Justices enforce the LSBA's mandatory association requirement and perform more than a legislative role with respect to such rules. Accordingly, legislative immunity is inapplicable to the Justices.

## IV. Rule 12(b)(6) Motion

The Court, having concluded that it only has subject matter jurisdiction over count one of Boudreaux's complaint, will next consider defendants' Rule 12(b)(6) motion as it pertains to the remaining claim, that the LSBA's compelled membership requirement violates his First and Fourteenth Amendment rights.

### A.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, the

Court must typically limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Court may consider documents that are essentially "part of the pleadings"—that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## B.

Defendants argue that the Louisiana Supreme Court is an improper defendant and should be dismissed from this lawsuit because it is not a juridical entity.[91]  State law determines whether an entity has the capacity to sue or be sued. Fed. R. Civ. P. 17(b)(3). Under Louisiana law, an entity cannot be sued unless it is a juridical person. *Chisom v. Edwards,* No. 86-4075, 2012 WL 13005340, at *3 (E.D. La. Aug. 6, 2012) (Morgan, J.). The Louisiana Supreme Court is not a juridical person. *Id.*

Boudreaux argues that this case is indistinguishable from *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005), which stated that "[w]hen acting in its enforcement capacity, the Louisiana Supreme Court, and its members, are not immune from suits for declaratory or injunctive relief."[92] *Id.* (citing *Consumers Union*, 446 U.S. at 719).

---

[91] R. Doc. No. 12-2, at 16–17. Defendants do not argue that the LSBA is not a juridical entity.

[92] R. Doc. No. 20, at 16–17.

Plaintiffs in that case sought declaratory and injunctive relief against the enforcement of a Louisiana Supreme Court rule regarding bar admissions. *Id.*

Importantly, though, in *LeClerc*, plaintiffs only sued the Justices of the Louisiana Supreme Court in their official capacities, among other individual defendants, *not* the Louisiana Supreme Court itself. *Id.* at 405. Similarly, in *Consumers Union*, cited by the Fifth Circuit in support of its holding, defendants did not appeal the issue of whether the Virginia Supreme Court was a "person" suable under 42 U.S.C. § 1983 and, therefore, the issue was not before the court. 446 U.S. at 737 n.16.

Moreover, district courts in Louisiana have consistently held, since *LeClerc*, that the Louisiana Supreme Court is not a person or juridical entity capable of being sued under § 1983. *See Bankston v. Hamilton*, No. 16-1368, 2017 WL 872666, at *4 (W.D. La. Jan. 27, 2017) (citation omitted); *Scott v. Supreme Court of Louisiana*, No. 12-2502, 2013 WL 1288565, at *3 n.7 (E.D. La. Mar. 27, 2013) (Feldman, J.) (citation omitted); *Mahogany v. L.A.R.S. 15:1186(A)(2)*, No. 07-1280, 2007 WL 1851941, at *2 (E.D. La. June 27, 2007) (Barbier, J.) (citations omitted). For the foregoing reasons, the Louisiana Supreme Court is not a proper defendant and must be dismissed from this lawsuit.

## C.

Defendants also argue that Boudreaux's first claim for relief is barred by the United States Supreme Court's decisions in *Lathrop v. Donohue*, 367 U.S. 820 (1961)

(Brennan, J., plurality opinion) and *Keller*, 496 U.S. at 17, and assert that *Janus v. AFSCME*, 138 S. Ct. 2448 (2018) did not overrule these binding precedents.[93]

Boudreaux argues that the United States Supreme Court has not resolved the question of whether attorneys may be compelled to associate with an organization that engages in political or ideological activities because "*Keller* assumed, without deciding, that compulsory membership requirements are valid, citing *Lathrop*."[94] Boudreaux argues that *Lathrop* did not resolve the mandatory-membership question because the plurality decision stated that it was addressing "only . . . a question of compelled financial support of group activities, not . . . involuntary membership in any other aspect."[95] Boudreaux urges this Court to hold that, based on the Supreme Court's reasoning in *Janus*, the LSBA cannot constitutionally compel Boudreaux to associate with it to practice law in Louisiana.[96]

The Court is not persuaded that the United States Supreme Court left the mandatory-membership question open in *Keller* or *Lathrop*. The Court is similarly not persuaded that *Janus* overruled one or both decisions.

In *Lathrop*, the plaintiff, a Wisconsin attorney, challenged the constitutionality of the Wisconsin Supreme Court's order requiring all attorneys to join the Wisconsin Bar Association and pay mandatory dues to be licensed to practice law in the state. 367 U.S. at 827–28. The United States Supreme Court clarified that it was only

---

[93] R. Doc. No. 12-2, at 5.
[94] R. Doc. No. 20, at 6.
[95] *Id.* (citing *Lathrop*, 367 U.S. at 828).
[96] *Id.* at 6–9.

confronted with the "question of compelled financial support of group activities, not with involuntary membership in any other aspect" because the plaintiff's "compulsory enrollment imposes only the duty to pay dues." *Id.*

This case presents an analogous situation. Boudreaux's compulsory enrollment in the LSBA imposes upon him only the duty to pay dues and it does not otherwise compel him to attend meetings or associate with any person. The United States Supreme Court, therefore, has already answered the question presented in Boudreaux's first claim—whether states can condition the right to practice law in the state on membership in the state bar association and the payment of dues—in the affirmative. *Keller* relied upon this holding in deciding that an integrated bar association's use of compulsory dues to finance activities germane to its legitimate purposes does not violate attorneys' First Amendment rights. 496 U.S. at 13–14.

This case is distinguishable from *Janus*, which held that public-sector unions may not deduct agency fees or "any other payment to the union" from the wages of nonmember employees unless the employees waive their First Amendment rights by "clearly and affirmatively consent[ing] before any money is taken from them." 138 S. Ct. at 2486. Like *Keller* and *Lathrop*, this case involves mandatory membership in a bar association, not a public-sector union. The majority in *Janus* did not discuss *Keller* or respond to the dissent's assertion that *Keller* was a "case . . . involving compelled speech subsidies outside the labor sphere [that] today's decision does not question." 138 S. Ct. at 2498 (Kagan, J., dissenting). The United States Supreme Court has made it clear that "if a precedent of this Court has direct application in a

case [here, *Keller*], yet appears to rest on reasons rejected in some other line of decisions [here, *Janus*], the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation omitted).

The Court must, therefore, apply *Lathrop* and *Keller* to this controversy. *See Adam Jarchow and Michael D. Dean v. State Bar of Wisconsin, et al.*, No. 19-266, 2019 WL 6728258, at *1 (W.D. Wis. Dec. 11, 2019), *aff'd*, No. 19-3444 (7th Cir. Dec. 23, 2019) (holding that even though *Janus* may have eroded the foundation of *Keller*, the court was still bound by *Keller*); *Caruso v. Washington State Bar Association 1933*, 716 F. App'x 650, 651 (9th Cir. 2018) (holding that the district court properly dismissed the plaintiff's action challenging the constitutionality of the Washington State Bar Association's mandatory membership and dues requirements, citing *Keller* and *Lathrop*); *Gruber v. Oregon State Bar*, No. 18-1591, 2019 WL 2251826, at *8–*9 (D. Or. Apr. 1, 2019) (dismissing the plaintiff's action challenging the constitutionality of the Oregon State Bar Association's mandatory membership and dues requirements because *Keller* and *Lathrop* controlled).

Because Boudreaux's first claim for relief is foreclosed by the Supreme Court's decisions in *Lathrop* and *Keller*, the Court must dismiss the claim pursuant to Rule 12(b)(6).

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), is **GRANTED IN PART**. Counts two and three of Boudreaux's complaint are **DISMISSED WITHOUT PREJUDICE** as to the LSBA and the individually named Justices.

**IT IS FURTHER ORDERED** that counts two and three of Boudreaux's complaint are **DISMISSED WITH PREJUDICE** as to the Louisiana Supreme Court.

**IT IS FURTHER ORDERED** that the motion to dismiss for failure to state a claim for relief, pursuant to Rule 12(b)(6), is **GRANTED IN PART**. Count one is **DISMISSED WITH PREJUDICE** as to all defendants.

New Orleans, Louisiana, January 13, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**